**John SLEVIN, et al., Plaintiffs,**

v.

**HOME DEPOT, Defendant.**

**No. C 00 715 SBA.**

United States District Court,
N.D. California.

July 12, 2000.

Dickstein & Merin, Mark E. Merin, Sacramento, CA, for plaintiffs.

Thomas J. Leanse, Stacey McKee Knight, Los Angeles, CA, for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ARMSTRONG, District Judge.

This matter comes before the Court on Defendant's Motion to Dismiss [# 10]. In an order dated May 8, 2000, the Court converted defendant's motion to a Motion for Summary Judgment. The parties filed supplemental briefs and accompanying declarations. Defendant filed a reply brief including Evidentiary Objections to Declaration of John P. Slevin in Support of Plaintiffs' Opposition to Defendant's Motion for Summary Judgment. Defendants also have filed two requests for Judicial Notice. Having read and considered the papers submitted by the parties and being fully informed, the Court hereby GRANTS defendant's Motion for Summary Judgment, SUSTAINS in part and OVERRULES in part defendant's objections to evidence, and GRANTS defendant's Request for Judicial Notice.

## I. BACKGROUND

### A. The Incident

On November 6, 1998, plaintiffs, Lionel Weisberg and John Slevin, in an effort to register voters, engaged in petitioning activities immediately outside the Main Exit to Home Depot's Pittsburg, California

store.[1] (Cmplt. at ¶ 7; Norris Decl. at ¶ 15). Prior to commencing their activities and pursuant to Home Depot's requirements, plaintiffs allegedly submitted an application and received instructions to confine their activities to a "remote area at least 150 yards from the closest entrance or exit of the Home Depot."[2] (Cmplt. at ¶ 7). They received a warning that they would be placed under citizen's arrest if they failed to confine their activities to the appropriate area. (Id.).

Despite the warning, plaintiffs solicited signatures immediately outside the store's main exit. (Norris Decl. at ¶ 15). Pittsburg Home Depot store manager Kyle Norris asked plaintiffs to confine their activities to an area not immediately in front of the Entrance or any of the exits.[3] When plaintiffs refused to confine their activities accordingly, Home Depot placed them under citizen's arrest. Pittsburg police officers subsequently arrived and handcuffed plaintiffs, ushered them into the back of a police car, and transported them to the County Jail, from where they were released after being fingerprinted, photographed, and cited. (Cmplt. at ¶ 7).

## B. The Physical Structure

The Pittsburg Home Depot is housed within a single building known as the North Park Plaza ("the Plaza"), which contains approximately 367,000 square feet. The Home Depot occupies approximately 100,300 of these square feet. The only other tenant in the plaza at the time of the incident was Staples. The Plaza does not have any interior common spaces. (Norris Decl. at ¶ 5). An automobile only may gain access to the parking lot by way of California Avenue N, a frontage road that encircles the Plaza. (Id. at ¶ 8).

The Pittsburg Home Depot sells a wide variety of home improvement and gardening merchandise and construction supplies. (Norris Decl. at ¶ 3). It averages 2,800 customer transactions per day. (Id.). Neither the store nor the Plaza contain a theater or other entertainment-oriented facility. (Id. at ¶ 4 and 7). Despite its name, the Plaza is essentially a building divided into four parts and surrounded by a parking lot.

## C. The Home Depot's Perimeter

The Home Depot includes only one entrance way, which is located on the South side of the store, along with three exits. A paved area measuring approximately 24 feet from the front of the building to the edge of the parking lot's drive isle runs along the front of the store. This 24 foot wide strip accommodates all pedestrian traffic entering and leaving the store, merchandise displays, such as plants, patio supplies, barbecues, and jacuzzis, a cart return area, and beverage machines. A hot dog stand is maintained on the portion of the strip between the Entrance and Main Exit. (Id. at ¶¶ 9–10 and see Slevin Decl. at ¶ 4). The hot dog vendor sells hotdogs, sandwiches, ice cream, drinks and other foods. (Slevin Decl. at ¶ 4). Six to twelve lawn chairs are available for sitting in the vicinity of the food carts and there does not appear any restriction on who

1. Plaintiffs in their petitioning apparently sought the support of Contra Costa County residents to urge the County Board of Supervisors to adopt a Contra Costa Industrial Safety Ordinance. (Norris Decl. at ¶ 15 and Ex. D).

2. Although plaintiffs did not adduce any physical evidence of their applications, they did submit a blank copy of a Home Depot petitioning application. In the introduction, the application provides: "Neither the enforcement of these rules nor the conduct of any activity pursuant to these rules shall consti-

tute or be deemed to constitute a dedication of the property to public uses, nor shall these rules be construed or interpreted as an acquiescence or a waiver of the private property rights of Home Depot U.S.A. Inc." (Slevin Decl. at Ex. 15).

3. Store policy restricts speech activity in front of the Entrance or any of the exits because such activity impedes traffic and poses a safety risk by creating congestion. (Norris Decl. at ¶ 16).

may gather at these chairs. (Slevin Decl. at ¶ 4, Norris Decl. at ¶ 11, Norris Supp. Decl. at ¶ 2). Mr. Slevin has observed individuals patronizing the vendors without entering the store. (Slevin Decl. at ¶ 7).

Dana Butcher Associates, whose Dana Butcher serves as the property manager of the Plaza, has posted a sign between the Home Depot garden center and the vacant store immediately next to the Home Depot recognizing it as a "PUBLIC FORUM AREA" for "SOLICITING, PETITION-ING AND/OR DISTRIBUTING LITER-ATURE." (Butcher Decl. at ¶¶ 1–2 and see Slevin Decl. at Ex. 13). The sign notes that the presence of petitioners "is permitted by California Court Decisions" and directs prospective petitioners to contact the Investment Property Management company for an application to petition on the property. (Id.).

## D. The Instant Action

Plaintiffs filed the instant complaint in the Superior Court for the State of California in and for the County of Contra Costa on November 4, 1999. Defendant removed the case to federal Court on March 1, 2000, based on complete diversity of citizenship. Plaintiffs' complaint includes four causes of action: (1) injunctive relief against future violations of the California Constitution; (2) false arrest and imprisonment; (3) denial of constitutional rights; and (4) intentional infliction of emotional distress. The last three of these causes of action all relate to the events on November 6, 1998. The first cause of action seeks an injunction enjoining Home Depot from enforcing its application procedure.

Defendant moved to dismiss plaintiffs' claims as a matter of law because California law does not authorize plaintiffs to petition on Home Depot's private property. In an order dated May 8, 2000, this Court converted the motion into a motion for summary judgment and ordered the parties to submit briefs no later than June 30, 1999. The parties were instructed to include factual support for their respective positions.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, summary judgment is warranted against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party moving for summary judgment bears the initial burden of demonstrating the "absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. If the movant meets this burden, the nonmoving party must come forward with specific facts demonstrating a genuine factual issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. DISCUSSION

### A. Objections to Evidence

Defendant has raised a number of objections to the declaration of John Slevin. The Court rules on these objections in the chart that follows:

| EVIDENCE ELICITING THE OBJECTION | OBJECTION | RULING |
|---|---|---|
| "I am a plaintiff in this action and a petitioner who regularly registers voters and obtains signatures on petitions to place | 1. Lack of Foundation. FRE 602. 2. Improper opinion and conclusion. | 1. The objection is OVERRULED as to where Plaintiff petitions since the foundation is plaintiff's personal experience. The objection is SUS- |

| | | |
|---|---|---|
| matters on local and statewide ballots. To accomplish these goals, I frequently petition on sidewalks and common areas in front of Home Depot stores through the State of California." (emphasis added). | FRE 701. 3. Irrelevant. FRE 401 and 402. | TAINED as to the term "common areas" since plaintiff provides no basis for knowing whether an area is a common area. 2. The objection is SUSTAINED since plaintiff's apparently legally infused conclusion regarding whether an area is a "common area" is not helpful to a clear understanding of his testimony or for determining a fact in issue. 3. The objection is OVERRULED. If admissible, the term "common area" could bear on the question of whether a public forum is present. |
| "Staples also has a large store adjacent to Home Depot and there are areas within the shopping center where additional stores may be developed." | Vague, misleading, and ambiguous language. F.R.E. 611(a). | OVERRULED. As defendant admits in its objection, the two vacant tenant spaces in the Plaza building are areas which may be developed. |
| "There are wide sidewalks and concrete aprons in front of Home Depot's store and food carts near the entrance and exit to the store from which hotdogs, sandwiches, ice cream, drinks and other foods are sold. About a dozen chairs are arrayed around and in the vicinity of the food carts where people continuously gather without obvious restrictions." | 1. Lack of foundation. F.R.E. 602. 2. Lack of foundation. F.R.E. 602. 3. Irrelevant. FRE 401 and 402. 4. Vague, ambiguous, and factually incorrect language. F.R.E. 611(a). | 1. OVERRULED. The plaintiff does not make any assertion in this language regarding the purpose of the carts nor who maintains them. 2. SUSTAINED. Plaintiff provides no foundation for knowing whether people "continuously gather" around the food carts. 3. OVERRULED. The hot dog vendor is relevant to the scope of the store's invitation to the public. 4. OVERRULED. Defendant essentially is asking the Court to resolve a factual issue, which is not the purpose of summary judgment. |
| "Adjacent to the entrance and exit doors are beverage machines which dispense cans of soda to the public." | 1. Lack of Foundation. FRE 602. 2. Irrelevant. FRE 401 and 402. 3. Vague, ambiguous, and misleading language. F.R.E. 611(a). | 1. OVERRULED. This statement does not make any assertion regarding the purpose of the beverage machines. 2. OVERRULED. The beverage machine is slightly probative of the scope of the store's invitation to the public. 3. OVERRULED. |
| "In front of Home Depot there are displays of flowers and other merchandise which people may inspect without entering the store." | 1. Lack of Foundation. FRE 602. 2. Irrelevant. FRE 401 and 402. 3. Improper opinion and speculation. FRE 701. 4. Vague, ambiguous, and misleading language. F.R.E. 611(a). | 1. OVERRULED. This statement does not make any assertion regarding the purpose of the flower displays. 2. OVERRULED. The flower display is probative of the scope of the store's invitation to the public. 3. OVERRULED. This statement does not include any conclusion regarding the purpose of the display. Plaintiff's statement regarding whether an individual may inspect the flowers without entering the store is not obviously an opinion. 4. OVERRULED. The term "other merchandise" clearly communicates that the flower displays are merchandise for sale. |
| "Customers need not be Home Depot shoppers to purchase food and drinks from the stands or | 1. Lack of Foundation. FRE 602. 2. Lack of Founda- | 1. OVERRULED. The Court reasonably reads this statement as plaintiff asserting he has observed |

| | | |
|---|---|---|
| machines in front of Home Depot and I have personally observed persons strolling across the parking lot to patronize the vendors without going into Home Depot's store." | tion. FRE 602.<br>3. Improper opinion and speculation. FRE 701.<br>4. Irrelevant. FRE 401, 402.<br>5. Vague, ambiguous, and misleading language. F.R.E. 611(a). | individuals patronizing the vendors without going into Home Depot's store. The statement need not mean that plaintiff observed the purpose of the individuals observed.<br>2. OVERRULED. The plaintiff need not identify who he observed. The circumstances of the observation are sufficient.<br>3. OVERRULED. As discussed in one, this statement need not be read as drawing any conclusion regarding the purposes of the individuals observed.<br>4. OVERRULED. This statement bears on the scope of the store's invitation to the public.<br>5. OVERRULED. |
| "Home Depot in Pittsburg is an excellent site at which to petition. There is a steady flow of traffic and wide open areas within which to discuss the issues on the petitions and obtain signatures from passers by." | 1. Irrelevant. FRE 401 and 402.<br>2. Lack of Foundation. FRE 602.<br>3. Improper opinion and speculation. FRE 701.<br>4. Vague, ambiguous, and misleading language. F.R.E. 611(a). | 1. OVERRULED. Whether Home Depot has a steady flow of traffic such that it therefore is an "excellent site" to petition is relevant to the public forum inquiry.<br>2. SUSTAINED. Plaintiff fails to provide its basis for knowing there is a steady flow of traffic.<br>3. SUSTAINED. Because foundation lacking, it is not clear whether the conclusions regarding "excellent site" and "steady flow" are rationally based on plaintiff's perception.<br>4. SUSTAINED. |
| "Home Depot has recognized that the area in front of its store is a public forum and has even designated it as such, erecting signs specifying that it permits 'soliciting, petitioning, and/or distributing literature' on its property since the presence of petitioners on Home Depot's property is 'permitted by California court decisions.'" | 1. Best Evidence. FRE 1006.<br>2. Lack of Foundation. FRE 602.<br>3. Lack of Foundation. FRE 602.<br>4. Improper opinion and speculation. FRE 701.<br>5. Vague, ambiguous, and misleading language. F.R.E. 611(a). | 1. OVERRULED. Sign does not say who designated the area as a public forum nor who erected it.<br>2. SUSTAINED. Plaintiff provides no foundation for knowing who designated the area as a public forum nor who erected the sign.<br>3. SUSTAINED. Plaintiff provides no foundation for knowing whether Home Depot designated the area as a public forum.<br>4. SUSTAINED.<br>5. OVERRULED. |
| "I have petitioned in front of Home Depot stores in many other California cities, including the City of Stockton, and know that Home Depot has adopted a system-wide application procedure used to keep track of persons petitioning on Home Depot's property." | 1. Lack of Foundation. FRE 602.<br>2. Lack of Foundation. FRE 602.<br>3. Irrelevant FRE 401 and 402.<br>4. Vague, ambiguous, and misleading language. F.R.E. 611(a). | 1. OVERRULED. Plaintiff has personal knowledge of where he petitioned. Merely showing that plaintiff did not include all relevant details and circumstances does not mean that plaintiff has not established a sufficient foundation for what he does include.<br>2. SUSTAINED. Plaintiff does not have a basis for concluding anything regarding what Home Depot does system-wide nor the purpose of the application procedure merely because he has petitioned in front of stores at other cities, which is the only foundation provided.<br>3. OVERRULED. The existence of a system-wide application procedure is slightly probative of whether the store invites petitioning activities, which is probative of |

whether the store is a quasi-public forum.
4. OVERRULED.

| | | |
|---|---|---|
| "Home Depot arrested us on November 6, 1998, not because it maintained that the area in front of Home Depot was not a public forum, but rather because we objected to the specific place to which we were to be confined since it was not located near an entrance or exit door which conflicted with the Home Depot written policy." | 1. Lack of Foundation. FRE 602. 2. Improper opinion and speculation. FRE 701. 3. Irrelevant. FRE 401 and 402. | 1. SUSTAINED. Plaintiff provides no foundation for knowing Home Depot's reason for arresting him. 2. SUSTAINED. Plaintiff has not demonstrated that his opinion is rationally based on his perception. 3. SUSTAINED. Even if accurately described by plaintiff, Home Depot's reason for arresting plaintiff does not bear on the public forum question. |
| "I have gone into the Home Depot store and, from my own observations, noted that the merchandise for sale includes a wide range of hardware items, gathering items, lightening fixtures, tools, building supplies, spas, sheds, plumbing equipment and supplies, carpeting, waste baskets, tubs, appliances, chemicals and a host of miscellaneous items." | 1. Lack of Foundation. FRE 602. 2. Irrelevant. FRE 401 and 402. | 1. OVERRULED. His foundation is his observations while in the Home Depot store. 2. OVERRULED. The type of items carried by Home Depot is relevant to the scope of the store's invitation. |
| "I have personally observed people meeting in the area in front of the stores where we have petitioned, and conversing in small groups." | 1. Lack of Foundation. FRE 602. 2. Irrelevant. FRE 401 and 402. 3. Improper opinion and speculation. FRE 701. 4. Vague, ambiguous, and misleading language. F.R.E. 611(a). | 1. OVERRULED. His foundation for this statement is his personal observations. 2. OVERRULED. The fact that people converse in small groups is slightly probative of the quasi-public forum question, although the absence of any information regarding the frequency of these meetings limits the probative value. 3. OVERRULED. No opinion is included in that statement. This objection borders on the frivolous. 4. OVERRULED. |
| "While I have not counted them, it looks like there are over a thousand parking places in the shopping center which is also adjacent to the Staples office supply store which includes a copy center. The sidewalk between the Staples and Home Depot stores resembles a plaza where people can meet and converse. Other areas of the shopping center are attractively landscaped and resemble a public park." | 1. Lack of Foundation. FRE 602. 2. Lack of Foundation. FRE 602. 3. Improper opinion and speculation. FRE 701. 4. Irrelevant. FRE 401 and 402. 5. Vague, ambiguous, and misleading language. F.R.E. 611(a). | 1. SUSTAINED. Because plaintiff admits he has not counted the parking spaces and fails to provide any basis for the court to conclude he has personal knowledge, his estimate lacks a foundation. 2. SUSTAINED. Although his personal observation would permit him to describe the sidewalk, the absence of any basis for knowing the elements of a "plaza" combined with the absence of a particularized description of this sidewalk undermines any finding that he has personal knowledge that this sidewalk resembles a plaza. 3. SUSTAINED. The opinion regarding the number of parking spaces is not rationally based on his perception if he has not made any attempt to count the spaces. Likewise, the "resembles a plaza" conclusion is not rationally based on any perception revealed by the plaintiff. |

| | | 4. OVERRULED. The presence of a Staples is probative of the issue of a quasi public forum, as discussed with respect to the *Trader Joe's* case *infra*.<br>*5. OVERRULED.* |
|---|---|---|
| "I would estimate that the interior of the store takes up no less than 300,000 square feet." | 1. Lack of Foundation. FRE 602.<br>2. Improper opinion and speculation. FRE 701.<br>3. Vague, ambiguous, and misleading language. F.R.E. 611(a). | 1. SUSTAINED. Plaintiff fails to provide any basis by which the court could conclude he has personal knowledge of the size of the store. For example, he does not testify to any particular experience in estimating store size.<br>2. SUSTAINED. Absent some reason to put faith in plaintiff's estimates, his estimate of the store's size is not rationally based on his perception.<br>3. OVERRULED. |

## B. Summary Judgment Motion

Defendant moved to dismiss all four of plaintiff's causes of action. The crux of its argument was that the third cause of action must fail since plaintiff had no constitutional right to engage in the petitioning activities described in the complaint. Absent such a right, the first cause of action for injunctive relief, the second cause of action for false arrest and imprisonment, and the fourth cause of action for intentional infliction of emotional distress must fail, respectively, because (1) no unconstitutional restraint exists for which an injunction is necessary, (2) plaintiffs were subject to a lawful arrest based on their unprotected petitioning activity, and (3) a lawful arrest without more does not constitute "outrageous conduct." In its brief responding to the Court's order converting this motion into one for summary judgment, defendant focused on the limited scope of the store's invitation to the public, the physical attributes of the Plaza in general and Home Depot in particular, and the physical isolation of the Plaza property as support for its conclusion that the Pittsburg Home Depot is not a public forum that would implicate petitioning rights. (Supp. Mem. at 2).

### 1. Background Law

Plaintiffs' complaint thrusts the Court into an area of California constitutional law that is still evolving. The threshold issue presented is whether the California constitution affords plaintiffs the right to petition the area in front of the Main Exit to the Pittsburg Home Depot.

#### a. *Pruneyard:* The Seminal Case

Article I, section 2 of the California Constitution provides: "Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press." This provision extends broader protection to free speech rights than does the First Amendment. *See Robins v. Pruneyard Shopping Center,* 23 Cal.3d 899, 908, 153 Cal.Rptr. 854, 592 P.2d 341 (Ca.1979). In some situations, the free speech and petitioning protection provided by this provision outweighs a private property owner's right to exclude others. *NLRB v. Calkins,* 187 F.3d 1080, 1090 (9th Cir.1999).

In *Pruneyard,* the California Supreme Court held that Article I, sections 2 and 3 protect "reasonably exercised" speech and petitioning in "shopping centers even when the centers are privately owned." *Pruneyard,* 23 Cal.3d at 910, 153 Cal.Rptr. 854, 592 P.2d 341. The Court noted that shopping centers, which "apparently" had replaced central business districts as the hub of retail activity, can furnish an "essential and invaluable forum" for the exercise of

speech and petitioning rights. *Id.* The private shopping center at issue in that case occupied approximately 21 acres and included 65 shops, 10 restaurants, a cinema, and the central courtyard where the plaintiffs had conducted their petitioning. *Id.* at 902, 153 Cal.Rptr. 854, 592 P.2d 341.

### b. The *Pruneyard* Balancing Test

The Court in *Pruneyard* carefully limited its holding by citing favorably to the following passage from a prescient 1994 dissenting opinion by Justice Mosk in *Diamond v. Bland:*

> It bears repeated emphasis that we do not have under consideration the property or privacy rights of an individual homeowner or the proprietor of a **modest retail establishment**. As a result of advertising and the lure of a congenial environment, 25,000 persons are induced to congregate daily to take advantage of the numerous amenities offered by the [shopping center at issue in *Diamond* ]. A handful of additional elderly persons soliciting signatures and distributing handbills in connection therewith, under reasonable regulations adopted by defendant to assure that these activities do not interfere with normal business operations would not markedly dilute defendant's property rights.

*Id.* at 910–11, 153 Cal.Rptr. 854, 592 P.2d 341 (citing *Diamond v. Bland,* 11 Cal.3d 331, 345, 113 Cal.Rptr. 468, 521 P.2d 460 (1974) (Mosk, J., dissenting)) (internal citation omitted) (emphasis added). *Pruneyard* thus distinguishes between shopping centers, which implicate First Amendment rights, and modest retail establishments, which do not, but it fails to establish a bright line rule regarding retail stores.[4] The focus of *Pruneyard* and its progeny is whether "private property . . . has taken

on the attributes of public property." *Feminist Women's Health Center v. Blythe,* 32 Cal.App.4th 1641, 1660, 39 Cal. Rptr.2d 189 (1995).

 In the wake of *Pruneyard,* a court should balance the interests of the property owner and of society "with respect to the particular property or type of property at issue" when determining whether a state constitutional right to engage in free speech and petitioning activities exists. *See Trader Joe's Co. v. Progressive Campaigns,* 73 Cal.App.4th 425, 433, 86 Cal.Rptr.2d 442 (1999). Relevant factors in this balancing analysis include whether the property owner has opened his property to the public, the scope of the property owner's invitation to the public, whether the property includes places for people to congregate and spend time together, and the purpose(s) which motivates people to come to the property.[5] *Id.* at 433–34, 86 Cal.Rptr.2d 442. The Ninth Circuit recently identified similar factors as shaping the analysis of whether a small business qualifies as a "modest retail establishment." It concluded that a court should consider "the nature and extent of the public invitation to the property, and the nature, purposes, and primary uses of the property." *NLRB v. Calkins,* 187 F.3d 1080, 1090 (9th Cir.1999).

### c. The Spectrum of *Pruneyard* Cases

The best approach for assessing defendant's motion is to imagine a spectrum of commercial entities. A two-story, single-purpose building that houses a bank is an example of one end of the spectrum. *Bank of Stockton v. Church of Soldiers of the Cross of Christ of the State of California,* 44 Cal.App.4th 1623, 52 Cal.Rptr.2d 429 (1996). In concluding that the Bank was a

---

**4.** As *Trader Joe's Co. v. Progressive Campaigns, Inc.,* 73 Cal.App.4th 425, 86 Cal.Rptr.2d 442 (1999), noted, *Pruneyard* held neither that petitioning and free speech activities outweigh private property interests only at large shopping centers nor that such activities can be exercised on any property except for individual residences and modest retail establish-

ments. *Trader Joe's,* 73 Cal.App.4th at 433, 86 Cal.Rptr.2d 442.

**5.** *Pruneyard* itself drew attention to both the large volume of individuals passing through shopping centers and the range of amenities offered by such centers.

"modest retail establishment" whose property interests outweigh society's interests in utilizing the building as a public forum, *Bank of Stockton* emphasized that the building did not provide any place for people to congregate and that the public invitation generally extended only to those people contracting business at the bank. *See Id.* at 1630–31, 52 Cal.Rptr.2d 429. A stand-alone, medical center, albeit larger in size, forms another example of this end of the spectrum. *See Allred v. Harris,* 14 Cal.App.4th 1386, 1392, 18 Cal.Rptr.2d 530 (1993) (concluding that the Medical Center, which housed nineteen tenants ranging from a general surgery center to a family planning center, lacked the attributes of a public forum particularly since it did not provide a place for the public to congregate and offered services only to a very specific clientele). *See also Planned Parenthood v. Wilson,* 234 Cal.App.3d 1662, 1672, 286 Cal.Rptr. 427 (1991) ("Although members of the public are invited to avail themselves of the particular services performed by specific tenants [in the medical complex], they are not invited to congregate, relax, visit, seek out entertainment, browse and shop for personal, household, or general business merchandise.").

The large shopping center constitutes the other end of the spectrum. *See Pruneyard,* 23 Cal.3d at 910–11, 153 Cal. Rptr. 854, 592 P.2d 341; *Union of Needletrades v. Superior Court of Los Angeles County,* 56 Cal.App.4th 996, 1017, 65 Cal. Rptr.2d 838 (1997). Unlike a medical building or a bank, it invites people to congregate. *See Pruneyard,* 23 Cal.3d at 910, 153 Cal.Rptr. 854, 592 P.2d 341.

*Trader Joe's* provides an instructive example for a case falling between these two poles. It involved an 11,000 square-foot, single structure, single use, retail food store that apparently was *not* part of a shopping center and did not share property with any other retailer. *Trader Joe's,* 73 Cal.App.4th at 428, 433, 86 Cal.Rptr.2d 442. In finding that the store was not uniquely situated to constitute a public forum, the court concentrated on the scope of the store's public invitation. As distinguished from the shopping center in *Pruneyard,* Trader Joe's invited people only to shop for food and food-related items, not to meet friends, eat, rest, or be entertained; moreover, the store provided no space for people to congregate, no restaurants for people to eat, and no theaters or other forms of entertainment. *Id.* at 433, 86 Cal.Rptr.2d 442. Accordingly, the public's interest in using the store as a forum for free speech and petitioning activity was less pronounced than in the case of a large shopping center. *Id. See Busch v. Ralphs Grocery Co.,* Super. Ct. No. SC051874 (Cal.Ct.App. June 15, 2000) (holding private property rights outweigh public's interest in using as a forum for speech a 32,428 square foot grocery store that invites people to shop and not to congregate, does not provide a place for people to sit and eat, and does not offer a theater, plazas, walkways, or courtyards).

*In re Lane,* 71 Cal.2d 872, 79 Cal.Rptr. 729, 457 P.2d 561 (1969) (en banc) and *Calkins,* two other prominent cases falling between the aforementioned poles, reach an opposite result than *Trader Joe's. Lane,* which predated *Pruneyard* and rested on federal law [6], held that the First Amend-

---

**6.** *Lane* relied on *Amalgamated Food Emp. Union Local 590 v. Logan Valley Plaza,* 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968), a case subsequently overruled by *Lloyd Corp. v. Tanner,* 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972) as recognized by *Hudgens v. NLRB,* 424 U.S. 507, 517–18, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976). Thus, defendant disputes *Lane*'s precedential value. As suggested by the earlier discussion of the difference between the constitutional requirements of

the California constitution and the First Amendment, the mere fact that *Lane* is no longer viable in the federal First Amendment setting does not render it useless as precedent for purposes of the California constitutional analysis. The Ninth Circuit recently "reject[ed]" the suggestion that *Lane* is no longer "good law." *Calkins,* 187 F.3d at 1090 n.5. *Pruneyard* specifically noted that the change in federal law had not diminished *Lane*'s usefulness as precedent for state law. *Prune-*

ment protected·the petitioner's efforts to distribute handbills to customers entering a large, stand-alone, "super-market-type" grocery store. *Lane,* 71 Cal.2d at 873, 79 Cal.Rptr. 729, 457 P.2d 561. The handbills distributed by the petitioner, who had positioned himself on the store's sidewalk just outside one of its doorway entrances, urged customers not to patronize the store since it advertised in newspapers published by an individual with whom petitioner's union was immersed in a labor dispute. *Id.* In holding that this particular part of the sidewalk was a "public area in which members of the public may exercise First Amendment rights," the Court noted that holding otherwise effectively would permit the store to immunize itself from "on-the-spot public criticism." *Id.* at 876, 79 Cal. Rptr. 729, 457 P.2d 561.

The court in *Calkins* held that a large, supermarket grocery outlet did not constitute a "modest retail establishment." *Calkins,* 187 F.3d at 1092. The factors pushing in favor of petitioning rights included the store's location on a prominent state highway, the absence of a requirement that customers make advance appointments to shop, the fact that the use of the property was *not* limited to specific clientele nor specific purposes, and the store's accommodation of browsers who did not ultimately purchase any items. *Id.*

### 2. Analysis

The instant case involves a large store—occupying 100,300 square feet—within a larger building/shopping center. Unlike the stores in *Trader Joe's, Lane,* and *Cal-*

kins, the Home Depot is not a stand-alone store. On the other hand, unlike in *Pruneyard,* the defendant here is an individual store within the shopping center rather than the shopping center itself [7] and the petitioning activities occurred adjacent to the store and not in a central courtyard.

██ As a preliminary point, defendant cannot reasonably argue that the mere fact that a store is part of a shopping center means that the store itself cannot be subject to suit for alleged violations of free speech and petitioning activities in areas associated with the store. If a stand-alone store is potentially liable for free speech violations, as both *Lane* (regardless of the scope of its continuing viability) and *Calkins* suggest, then an individual store within a shopping center retains similar exposure. Defendant's strongest authority, *Trader Joe's,* carefully left open the possibility that a store that is not a public forum by itself may constitute a public forum due to its proximity to other stores by observing that "because [Trader Joe's] is a stand-alone structure, there can be no contention that its relationship to other establishments transforms it into a public forum." *Trader Joe's,* 73 Cal.App.4th at 433, 86 Cal.Rptr.2d 442 (emphasis added).

Plaintiffs rely principally on *Lane* and *Calkins,* but the instant facts are significantly distinct from the facts involved in those cases. *Lane* concerned union petitioning activities whose content was directly aimed at the store being picketed. Numerous California cases have emphasized both the union nature of the activities in *Lane* and the connection between the con-

---

yard, 23 Cal.3d at 908–9, 153 Cal.Rptr. 854, 592 P.2d 341. *Pruneyard* then recounted, without passing judgment, that *Lane* "extended the assurance of protected speech to the privately owned sidewalk of a grocery store." *Id.* at 909, 153 Cal.Rptr. 854, 592 P.2d 341. At least one California case has determined that this reference in *Pruneyard* did not denote any holding as to whether the state constitution protects free speech and petitioning rights at private, stand-alone grocery stores. *Trader Joe's,* 73 Cal.App.4th at 436, 86 Cal. Rptr.2d 442.

7. As Justice White observed in a concurring opinion in *Pruneyard Shopping Center v. Robins,* 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980), the California Supreme Court, in *Pruneyard,* "was dealing with the public or common areas in a large shopping center and *not* with an individual retail establishment within ... the shopping center." *Robins,* 447 U.S. at 95, 100 S.Ct. 2035 (White, J., concurring) (emphasis added).

tent of the speech and the store as factors particularly weighing against the property owner's interest and distinguishing *Lane* from other cases. *Trader Joe's*, 73 Cal. App.4th at 435, 86 Cal.Rptr.2d 442; *Allred v. Shawley*, 232 Cal.App.3d 1489, 1504, 284 Cal.Rptr. 140 (Cal.Ct.App.1991); *see Busch v. Ralphs Grocery Co.*, Super. Ct. No. SC051874, at 2 n. 1 (Cal.Ct.App. June 15, 2000); *Sears, Roebuck, & Co. v. San Diego County District Council of Carpenters*, 25 Cal.3d 317, 328, 158 Cal.Rptr. 370, 599 P.2d 676 (1979). *Calkins* also involved union picketing and handbilling.[8] Because the instant case does not involve union activities nor does it entail a message particularly related to Home Depot, plaintiffs' two primary authorities are distinguishable.

On the other hand, the instant facts also are distinguishable from those at issue in *Trader Joe's*, defendant's strongest authority. Despite defendant's contentions otherwise, the Pittsburg Home Depot, which is almost ten times the size of the store in *Trader Joe's*, is not a per se single use store. In addition to selling construction, home improvement items, and garden supplies, it permits a vendor to sell hot dogs and other food items in front of the store and provides a sitting area of approximately 6–12 chairs. (*See* Slevin Decl. at Exs. 5 and 6). It thus implicitly invites individuals to purchase food from the vendor and to sit and eat on the premises. In addition, a sign located between the Home Depot Garden Center and the vacant store immediately next to the Home Depot proclaims the area as a "PUBLIC FORUM AREA" where petitioning can occur under certain conditions.

■ Despite these facts distinguishing the instant case from *Trader Joe's*, no triable issue exists regarding whether the area in front of the Main Exit to the Pittsburg Home Depot is a public forum. The hot dog stand and modest sitting area hardly transform the Home Depot into the hub of activity envisioned in *Pruneyard*, which involved a 21 acres shopping center housing some 65 shops, 10 restaurants, and a cinema. In light of the almost 3,000 customers that engage in transactions each day at the Pittsburg Home Depot, the six to twelve person sitting area is, based on the evidence before the Court, a sidelight to Home Depot's operation. Neither the Home Depot nor the shopping center in which it sits contain any entertainment areas, such as a cinema, nor any common plazas or courtyards other than the hot dog area. The size of the shopping center in *Pruneyard* dwarfs that of the "shopping center" involved here.

■ The sign designating a portion of the frontage area of Home Depot as a public forum area would not raise a triable issue even if Home Depot had erected it.[9]

---

**8.** As a further point of distinction, *Calkins* involved an error by the Ninth Circuit. After discussing *Pruneyard*, the Ninth Circuit referred to *Lane* as a case arising "[s]ince then." *Calkins*, 187 F.3d at 1090. As a result, the Court implicitly read *Lane* as extending *Pruneyard* from the shopping center setting to the stand-alone grocery store setting. *Lane* preceded *Pruneyard* by approximately ten years. This error may not have impacted the Ninth Circuit's analysis since the court, despite the changes in federal law, rejected the suggestion that *Lane* was no longer good law.

In addition to its chronological error, *Calkins* made no mention of *Trader Joe's*. Although *Calkins* was decided on August 11, 1999, it was argued and submitted on May 3, 1999. The California Court of Appeals decided *Trader Joe's* after the May 3, 1999, date but before the August 11, 1999, date. As the Ninth Circuit declared in *Calkins*, when deciding an issue of state law on which the state's highest Court has not ruled, a federal Court "must predict how the highest state Court would decide the issue using intermediate appellate Court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Calkins*, 187 F.3d at 1089. This Court has no way of knowing whether the Ninth Circuit considered *Trader Joe's* prior to rendering its written order.

**9.** Home Depot did not post the sign nor could one reasonably conclude it did from reading the sign, which refers potential petitioners to Dana Butcher Associates. In fact, the sign in capital letters instructs potential petitioners,

Plaintiffs have offered no evidence as to the sign's location other than that the sign(s) is on Home Depot's property.[10] (Slevin Decl. at ¶ 10). Nevertheless, Slevin concludes that the sign has designated "the area in front of [the] store [a]s a public forum." (*Id.*). This conclusion regarding the entire front of the store is unwarranted in light of the undisputed evidence that the sign is positioned between the Home Depot Garden Center and the vacant store immediately next to the Home Depot. By its terms, the sign limits the public forum designation to "[t]his area." Plaintiffs have provided no evidence that "[t]his area" encompasses the area where they engaged in their petitioning activities.

 Home Depot's implementation of an application procedure for individuals desiring to engage in noncommercial speech activity does not raise a triable issue. The mere fact that a store implements time, place, and manner regulations does not transform the area into a public forum. *See Lushbaugh v. Home Depot,* EC 026533, at 3 (Super.Ct.Ca. May 15, 2000). The store has not thereby dedicated its private property to public purposes. *Id. See generally Busch,* Super.Ct.No. SC051874, at 8 ("While the fact that some people are allowed to speak at the Ralphs store is a factor to consider in determining the nature of Ralphs's invitation to the public, it does not by itself create a quasi-public forum."). Home Depot's application explicitly states that its application rules do not result in the dedication of its property to public uses or the waiver of its private property rights.

In sum, even after construing the facts presented in the light most favorable to the plaintiffs, no dispute of material fact exists. The area in front of the Pittsburg Home Depot's Main Exit is not a public forum. The narrow scope of Home Depot's invitation to the public coupled with the absence of any significant area near the store's entrances or exits where people congregate for noncommercial purposes, eat, or are entertained renders any analogy to the shopping center in *Pruneyard* unavailing. Because no evidence exists that the substance of petitioner's petitioning activities particularly implicated Home Depot or involved union issues, *Lane* and *Calkins* do not indicate a different result. The court GRANTS defendant's Motion for Summary Judgment as to the public forum issue and, particularly, the third cause of action.

## C. Rule 56(f)

In their supplemental opposition, plaintiffs move the Court for leave to obtain discovery if the Court is inclined to grant defendant's motion. Plaintiffs specifically contend discovery will permit them to gather information on "the square footage of the enterprise, the number of transactions it processes monthly, the complete list of services it provides, the number and nature of the applications submitted for permission to petition in front of its store, and the uses to which the area claimed to be a public forum has traditionally been put."

Federal Rule of Civil Procedure 56(f) permits the Court to "refuse" an application for summary judgment or permit a continuance to permit discovery to be had when it appears "from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition." This rule requires affidavits setting forth clearly the particular facts sought. *State of California v. Campbell,* 138 F.3d 772, 779 (9th Cir.1998). The

---

"PLEASE DO NOT CONTACT ANY OF THE STORES." Plaintiffs have not explained why Home Depot should be charged with expanding the scope of its invitation to the public as a result of the third party property manager's sign.

**10.** Slevin refers to "signs" but provides evidence of only one sign.

party must make clear how the information sought would preclude summary judgment. *Hall v. Hawaii*, 791 F.2d 759, 761 (9th Cir.1986). The failure to comply with Rule 56(f) is a proper basis for denying the discovery request and proceeding to summary judgment. *Brae Trans., Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1443 (9th Cir.1986).

■ References in a memorandum to a need for discovery do not constitute a motion under Rule 56(f). *Brae*, 790 F.2d at 1443. In this case, plaintiffs have failed to bring a proper Rule 56(f) motion. They have not submitted any affidavit even addressing the need for discovery. Instead, they offer in their supplemental memorandum a one paragraph reference to the general type of facts they would seek in discovery without offering any explanation of how any of the facts sought will impact the applicable balancing test. Plaintiffs had approximately two months prior to the hearing date on the summary judgment motion to bring a 56(f) motion. Their failure to do so is incomprehensible.

## D. Other Causes of Action

### 1. First Cause of Action

■ Plaintiffs' first cause of action seeks injunctive relief enjoining defendant from enforcing Home Depot's application procedure. Even if the sidewalk adjoining the entrance way into the Home Depot store constituted a public forum, *Pruneyard* recognized that those who wish to disseminate ideas in such a forum do *not* have "free rein." *Pruneyard*, 23 Cal.3d at 910, 153 Cal.Rptr. 854, 592 P.2d 341. Time, place, and manner restrictions still are permissible. *See id.* at 909, 910, 153 Cal.Rptr. 854, 592 P.2d 341. In order to

survive California constitutional scrutiny, such restrictions must be (1) narrowly tailored, (2) serve a significant interest, and (3) leave ample alternative avenues of communication. *See Los Angeles Alliance for Survival v. City of Los Angeles*, 22 Cal.4th 352, 364, 93 Cal.Rptr.2d 1, 993 P.2d 334 (2000).

Plaintiffs' first cause of action alleges defendant has imposed an "unconstitutional restraint." Thus, its success hinges on the constitutional assertion in plaintiffs' third cause of action. In other words, plaintiffs' first cause of action will prevail only if (1) plaintiffs possessed petitioning rights on the area near Home Depot's Main Exit (the *Pruneyard* issue) and (2) Home Depot's time, place, and manner regulations were unconstitutional. Because the area in front of Home Depot's Main Exit was not a public forum, plaintiffs' suggestion of an "unconstitutional restraint" must fail. Plaintiff has not requested leave to amend. Summary adjudication of the first cause of action is proper.

### 2. Second and Fourth Causes of Action

■ Despite the Court's explicit order that the parties address whether the second and fourth causes of action must fail if the third cause of action is dismissed, plaintiffs did not address this issue in their supplemental briefing. They implicitly have conceded this point. Defendant persuasively shows that, based on the facts alleged in the complaint, elements in the second (false arrest) and fourth (intentional infliction of emotional distress) causes of action hinge on the arrest of plaintiffs being unlawful.[11] Because plaintiff has not

---

11. "The tort of false imprisonment is the nonconsensual, intentional confinement of a person without lawful privilege." *Molko v. Holy Spirit Ass'n for the Unification of World Christianity*, 46 Cal.3d 1092, 1123, 252 Cal.Rptr. 122, 762 P.2d 46 (Ca.1988) (internal quotation and citation omitted). Plaintiffs have not articulated any theory according to which Home Depot lacked a lawful privilege in re-

moving plaintiffs from its private property after plaintiffs persisted despite warning in activity prohibited by the store and unprotected by the California constitution.

The tort of intentional infliction of emotional distress requires outrageous conduct by the defendant. *Newby v. Alto Riviera Apartments*, 60 Cal.App.3d 288, 131 Cal.Rptr. 547, (Cal.Ct.

proposed any amendment that would save these causes of action, summary adjudication is proper as to these claims.

## E. Judicial Notice

 The Court may take judicial notice of matters of the public record. *See Mack v. South Bay Beer Distributors, Inc.,* 798 F.2d 1279 (9th Cir.1986). The Court GRANTS defendant's request that the Court take judicial notice of *Busch v. Ralphs,* Los Angeles County Superior Court Case No. SC 05817; *Waremart v. Discovery Petition Mgmt. Co.,* Butte County Superior Court Case No. 12243; *Young v. Raley's,* Yolo County Superior Court Case No. V97–000076; *Lushbaugh v. Home Depot,* EC 026533, 2 (Super.Ct.Ca. May 15, 2000); *Busch v. Ralphs Grocery Co.,* Super. Ct. No. SC051874 (Cal.Ct.App. June 15, 2000); and *Albertson's, Inc. v. James Young,* Nevada County Superior Court Case No. 60716.

## IV. CONCLUSION

Based on its finding that no dispute of material fact exists, the Court hereby GRANTS defendant's Motion for Summary Judgment as to all causes of action.

IT IS SO ORDERED.

App.1976). Outrageous conduct is conduct so "extreme and outrageous as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Alcorn v. Anbro Engineering, Inc.,* 2 Cal.3d 493, 499 n. 5, 86 Cal.Rptr. 88, 468 P.2d 216 (Ca.1970) (en banc) (denoting this approach as the Restatement view). Again, plaintiffs have not advanced any theory under which Home Depot removing plaintiffs from its private property after plaintiffs persisted despite warning in activity prohibited by the store and unprotected by the California constitution is outrageous.