107 Cal.Rptr.2d 172 (2001)
89 Cal.App.4th 476
James YOUNG et al., Plaintiffs and Appellants,
v.
RALEY'S, INC., Defendant and Respondent.
No. C033172.
Court of Appeal, Third District.
May 7, 2001.
Review Granted August 15, 2001.
*174 Dickstein & Merin and Mark E. Merin; Law Office of Fred J. Hiestand and Fred J. Hiestand, Sacramento, for Plaintiffs and Appellants.
Downey, Brand, Seymour & Rohwer and Jeffrey S. Galvin, Judy H. Hersher, Stephen G. Stwora-Hail, Laura M. Rojas; Law Offices of David F. Beach and David F. Beach, Santa Rosa, for Defendant and Respondent.
James S. Burling, Sacramento, and Harold E. Johnson for Pacific Legal Foundation as Amicus Curiae on behalf of Defendant and Respondent.
*173 SCOTLAND, P.J.
James Young, John Slevin, Eileen Ray, Richard Green, Joe Bigornia, and Charles Michael Noble (plaintiffs) are individuals who solicit and gather signatures on initiative petitions to place measures on election ballots. On three occasions, plaintiffs solicited signatures outside the entrance to a supermarket owned and operated by Raley's, Inc. (Raley's). On each occasion, plaintiffs refused to comply with the permit application procedure that Raley's required for such solicitations on its premises. After they were placed under citizen's arrest for trespass, plaintiffs sued Raley's for false arrest, intentional infliction of emotional distress, and violation of their rights of free speech and to petition the government under article I, sections 2 and 3 of the California Constitution.
After the trial court ruled in favor of Raley's, plaintiffs appealed.[1] They contend: (1) the trial court erred in determining that the Raley's supermarket in question is not a public forum and therefore Raley's did not violate plaintiffs' constitutional rights by excluding them from engaging in petitioning activities on its premises without complying with its permit procedure; (2) the court erred in determining that, even if the supermarket is a public forum, its permit application procedure and regulations governing solicitations on its premises are reasonable time, place, and manner restrictions; and (3) the court erred in finding that Raley's was not liable on plaintiffs' false arrest cause of action. We shall affirm the judgment.

*175 FACTS AND PROCEDURE
Although we review de novo the legal question of whether the facts demonstrate the Raley's supermarket is a public forum such that plaintiffs have a constitutionally protected right to engage in petitioning and speech activities on its premises, the trial court's findings regarding the historical facts are given deference and will not be disturbed if they are supported by substantial evidence. (Ghirardo v. Antonioli (1994) 8 Cal.4th 791, 799-800, 35 Cal.Rptr.2d 418, 883 P.2d 960; Board of Administration v. Wilson (1997) 52 Cal. App.4th 1109, 1128-1129, 61 Cal.Rptr.2d 207.)
Furthermore, the trial court's judgment is presumed to be supported by substantial evidence; it is the appellant's burden to demonstrate otherwise. (Foreman & Clark Corp. v. Fallon (1971) 3 Cal.3d 875, 881, 92 Cal.Rptr. 162, 479 P.2d 362.) To sustain this burden on appeal, an appellant's brief must set forth all of the material evidence bearing on the issue, not merely the evidence favorable to the appellant; in addition, the brief must show how the evidence does not sustain the challenged finding. (Id. at p. 881, 92 Cal.Rptr. 162, 479 P.2d 362; Niederer v. Ferreira (1987) 189 Cal.App.3d 1485, 1510, 234 Cal. Rptr. 779; Devers v. Greenwood (1956) 139 Cal.App.2d 345, 351-352, 293 P.2d 834.) If the appellant fails to do so, the claim of insufficiency of the evidence is waived. (Foreman & Clark Corp. v. Fallon, supra, at p. 881, 92 Cal.Rptr. 162, 479 P.2d 362; Niederer v. Ferreira, supra, at p. 1510, 234 Cal.Rptr. 779.)
Claiming the facts are "largely undisputed," plaintiffs have not challenged the sufficiency of the evidence. Consequently, they have waived any challenge to the court's factual findings. Hence, we take the facts primarily from the trial court's statement of decision.

FACTS REGARDING RALEY'S
Raley's operates a freestanding, "stand alone" supermarket in the central business district of the City of West Sacramento. The store does not physically adjoin other retail establishments and is not located in a shopping center, strip mall, or cluster of stores. Raley's owns an adjacent parking lot covering an area of 107,864 square feet. For about four years, Raley's had a bottle and can recycling center in its parking lot because state law required it, but the center was removed in November 1998 by agreement with local officials.
The total interior of the store is 57,668 square feet, with only 37,235 square feet open to the public. The distance between the checkstands and the merchandise aisles is about 15 feet. During peak business periods, this area is taken up by customers in lines waiting to make their purchases.
A private walkway leading to the supermarket entrance door lies between the store and the parking lot. The walkway has a total area of 3,913 square feet. It is 15 feet wide, but has usable space of only 9 feet. This usable space is diminished further by columns placed every 20 feet that support a soffit along the front of the store, and by two storage areas for shopping carts, which areas measure approximately 4 feet wide and between 10 and 20 feet in length. The walkway also houses newspaper racks, a soda vending machine, a kiddy ride, two "taxi and bus waiting benches," trash cans, and a water vending machine. A 44-inch-wide handicap access way runs the length of the walkway in approximately the middle, and must be kept clear pursuant to the Uniform Building Code and the Americans with Disabilities Act.
Raley's conducts numerous retail activities on its walkway, including a two-week *176 sidewalk sale in January, a Valentine's Day floral and sweets sale, an Easter decorations sale, a Halloween pumpkin sale in October, Christmas tree sales in December, and close-out sales intermittently throughout the year. Store managers schedule other sales on a periodic basis at their discretion. The walkway is crowded during these sales. When weather permits, Raley's sets up an outdoor barbecue from which it sells cooked meats on the weekend.
In November 1998, Raley's completed a remodel of the front of the store. An additional exit was installed to facilitate the convenience and speed of persons entering and exiting the store. The addition of the new exit was prompted by bottlenecks that had developed at the two existing doors and along the front of the store. The new exit doors are six feet wide, are located approximately in the middle of the walkway, and swing outward in the path of travel. The two older doorways were replaced with six-foot-wide sliding doors and must be kept clear at all times pursuant to the fire code.
Raley's did not design any common areas, recreational spaces, or seating or eating areas into the remodel. Neither the walkway nor the interior of the store provides areas for people to congregate. Although the store has a Hot Wok and Java City, which sell Chinese food and coffee, no seating is available to consume those items in the store. Raley's also has a pharmacy department with two chairs for people waiting for prescriptions. It leases out a small portion of its store to a Wells Fargo Bank, which provides banking services to its customers.
A bulletin board, on which people are permitted to post notices or advertisements, is located at the back of the interior of the store, near the pharmacy and restrooms. Raley's screens the board each day for inappropriate material, and the store manager has discretion to remove any display on the board or to remove the board itself.
Raley's affirmatively discourages people from lingering in the store and has their store security contact people who enter the store with no apparent intent to shop. It is undisputed that the primary reason people visit Raley's is to buy groceries and other convenience items found in the store, not to congregate, comparison shop, linger, or seek entertainment.
Experts for Raley's testified that five types of retail facilities currently exist: (1) the super-regional shopping center, such as the Arden Fair Mall in Sacramento, designed to serve around 300,000 people within a 12 mile radius and occupying between 500,000 and 1,500,000 square feet; (2) the regional facility, such as the Downtown Plaza and the County Fair Mall, designed to serve around 150,000 persons within an 8- to 10-mile radius and occupying between 300,000 and 1,000,000 square feet; (3) the community shopping center, designed to serve between 100,000 and 150,000 people within a 5- to 10-mile radius and taking up between 100,000 and 150,000 square feet; (4) the neighborhood shopping facility designed to serve 40,000 people within a 1.5 mile radius and taking up 30,000 to 100,000 square feet; and (5) the freestanding store, which has a similar trade area to the neighborhood shopping center.
The super-regional and regional centers typically are designed with public areas, entertainment, and leisure-type activities to attract comparison shopping at the various anchor stores. Regional centers, such as the Downtown Plaza in Sacramento and the County Fair Mall in Woodland, have common areas and non-retail events that mimic traditional downtowns. These nonretail activities are designed to facilitate *177 comparison shopping where the profit margin is relatively high, around 5 to 7 percent, and the volume of sales relatively low. They are specifically designed to be inviting and to keep people there longer to consider their options and purchases. The centers have a range of stores and typically have underground parking at some distinct central location to ensure a commitment by the shoppers to stay longer. The design blends a social and convivial atmosphere combined with retail activities aimed at those shopping with or without a particular purchase in mind. People often go to the centers as a family event and spend one and one-half hours when going to a regional shopping center. Outings to super-regional malls average around four hours per trip.
In contrast, grocery stores have a relatively low profit margin of 1 to 2 percent and rely on a high volume of customers. On the average, people make two and one-half trips per week, with each trip generally lasting less than one hour. Grocery stores have no common areas or non-retail events, so people generally do not make a family outing of going to the grocery store. The stores are designed for frequent, short trips and convenience and speed, rather than comparison shopping. The trend toward locating banks in grocery stores is an extension of this phenomenon.
Due to socioeconomic factors, the Raley's store in question sees a higher than average percentage of walk-in and repeat visits, with many people using public transportation, buses, and taxis to reach the store. The store registers approximately 105,000 transactions a month. West Sacramento has a population of approximately 30,000 people, and approximately 10,000 to 12,000 households.

Petitioning and solicitation activities
Proponents of initiatives must collect a certain number of signatures within a specified time to qualify initiatives for the ballot. To collect the necessary signatures, they typically contract with a company that obtains the signatures by paying a network of individuals a certain amount per signature collected. Because of the large number of people in the field collecting signatures at a large number of locations, the ability to qualify an initiative for the ballot does not depend on the use of a particular location. In fact, plaintiffs' expert testified that no single location is critical to obtaining enough signatures for any matter to qualify for a ballot.
Due to the large numbers of people who wished to engage in charitable and other solicitations at the limited entryway areas to Raley's stores, and because of customer complaints about confrontations with solicitors, Raley's created an application policy and regulations to manage such activities. Raley's issues solicitation permits on a first-come, first-served basis and does not give preferential treatment to any group.
Plaintiffs are individuals involved in the collection of signatures to qualify initiatives and referenda for statewide and local elections. On three separate occasions, individual plaintiffs were placed under citizen's arrest by employees of Raley's at its West Sacramento store after plaintiffs provoked conflicts with the employees, caused congestion at the entry and exit doors, detained customers in the crosswalks, followed customers to their cars, and refused to comply with the store's permit application procedure or leave the premises.
Plaintiffs sued Raley's for violation of their speech and petitioning rights under the California Constitution, and for false arrest and intentional infliction of emotional distress.
At the close of plaintiffs' evidence, the trial court granted a motion for judgment *178 (Code Civ. Proc., § 631.8) in favor of Raley's on plaintiffs' false arrest and intentional infliction of emotional distress theories, but denied judgment on the cause of action for violation of plaintiffs' constitutional rights.
After Raley's presented its evidence, the trial court ruled that the supermarket in West Sacramento is not a quasi-public forum and, therefore, Raley's did not have to make its property available to persons seeking to engage in petitioning and speech activities unrelated to the business of Raley's. Moreover, the court held that, even if the supermarket was a quasi-public forum, the regulations Raley's adopted to govern such activities on its premises are reasonable and constitutionally valid.

DISCUSSION
Relying on Robins v. Pruneyard Shopping Center (1979) 23 Cal.3d 899, 153 Cal. Rptr. 854, 592 P.2d 341 (hereafter Pruneyard) and its progeny, plaintiffs contend the private sidewalk adjacent to the Raley's supermarket in West Sacramento is a public forum where plaintiffs have the right to engage in speech and political petitioning activities pursuant to article I, sections 2 and 3 of the California Constitution.[2]
A similar claim was rejected in Trader Joe's Co. v. Progressive Campaigns, Inc. (1999) 73 Cal.App.4th 425, 86 Cal.Rptr.2d 442 (hereafter Trader Joe's). As we shall explain, the analysis in that case, with which we agree, is fatal to plaintiffs' appeal.

I
The decision in Pruneyard may be summarized as follows:
The shopping center in Pruneyard was privately owned and consisted of approximately 21 acres, 5 of which were devoted to parking and 16 of which were occupied by walkways, plazas, and buildings containing 65 shops, 10 restaurants, and a cinema. The challenged activity involved a group of students seated at a card table in a corner of the central courtyard soliciting signatures for a petition opposing a United Nations resolution against Zionism. (Pruneyard, supra, 23 Cal.3d at p. 902, 153 Cal.Rptr. 854, 592 P.2d 341.)
Under the federal Constitution, the students did not have the right to engage in expressive activity at a privately owned shopping center where their speech was unrelated to any activity within the center itself and they had adequate alternative avenues of communication, in the sense they could engage in the activity elsewhere. (Lloyd Corp. v. Tanner (1972) 407 U.S. 551, 564-570, 92 S.Ct. 2219, 33 L.Ed.2d 131, 140-143; Pruneyard, supra, 23 Cal.3d at pp. 903-904, 153 Cal.Rptr. 854, 592 P.2d 341; Trader Joe's, supra, 73 Cal.App.4th at p. 430, 86 Cal.Rptr.2d 442.)
The California Supreme Court determined that our state's Constitution affords a more expansive protection of free speech rights than does the federal Constitution. Thus, Pruneyard held that sections 2 and 3 of article I of the California Constitution protect speech and petitioning in shopping centers, subject to reasonable time, place and manner restrictions, even when the *179 centers are privately owned. (23 Cal.3d at p. 910, 153 Cal.Rptr. 854, 592 P.2d 341.)
Central to the holding in Pruneyard is the recognition that urban business districts arrayed along public streets have yielded many of their historic functions to suburban shopping malls situated on private property. In many instances, such malls have replaced central business districts as the favored forum for public congregation. (23 Cal.3d at pp. 907, 910, fn. 5, 153 Cal.Rptr. 854, 592 P.2d 341.) Thus, the Pruneyard holding is premised upon the fact that large retail shopping centers today serve as the functional equivalent of the traditional town center business block, where historically the public's free speech activity was exercised. (Id. at pp. 906-908, 910, fn. 5, 153 Cal.Rptr. 854, 592 P.2d 341.)
Pruneyard recognized the importance of the constitutional guarantees attaching to private ownership of property, but noted the property owner's interests were not materially injured by the challenged activity in light of the fact that the owner had fully opened his property to the public (23 Cal.3d at pp. 906, 910-911, 153 Cal.Rptr. 854, 592 P.2d 341): "`As a result of advertising and the lure of a congenial environment, 25,000 persons are induced to congregate daily to take advantage of the numerous amenities offered by the [shopping center there]. A handful of additional orderly persons soliciting signatures and distributing handbills in connection therewith, under reasonable regulations adopted by defendant to assure that these activities do not interfere with normal business operations ... would not markedly dilute defendant's property rights.' ...." (Id. at pp. 910-911, 153 Cal.Rptr. 854, 592 P.2d 341, citations omitted.)
Pruneyard emphasized it did "`not have under consideration the property or privacy rights of an individual homeowner or the proprietor of a modest retail establishment. . . ."' (23 Cal.3d at p. 910, 153 Cal. Rptr. 854, 592 P.2d 341, citation omitted.)
Taken as a whole, Pruneyard implies that privately owned smaller businesses or commercial establishments which do not assume the societal role of a town center by public invitation and dedication of private property may exclude petitioners and prohibit expressive activity unrelated to the business enterprise. (Planned Parenthood v. Wilson (1991) 234 Cal.App.3d 1662, 1670, 286 Cal.Rptr. 427.)

II
Appellate decisions applying Pruneyard focus on whether the property owner had so opened up his property for public use as to make it the functional equivalent of a public forum. (See, e.g., Trader Joe's, supra, 73 Cal.App.4th at pp. 433-34, 86 Cal.Rptr.2d 442; Bank of Stockton v. Church of Soldiers (1996) 44 Cal.App.4th 1623, 1630, 52 Cal.Rptr.2d 429; Allred v. Harris (1993) 14 Cal.App.4th 1386, 1390-1391, 18 Cal.Rptr.2d 530; Planned Parenthood v. Wilson, supra, 234 Cal.App.3d at pp. 1671-1672, 286 Cal.Rptr. 427; Allred v. Shawley (1991) 232 Cal. App.3d 1489, 1501-1502, 284 Cal.Rptr. 140.) The less an owner has opened up his or her property for use by the general public, the less the owner's rights are circumscribed by the statutory and constitutional rights of those who use it. (Schwartz-Torrance Investment Corp. v. Bakery & Confectionery Workers' Union (1964) 61 Cal.2d 766, 771, 40 Cal.Rptr. 233, 394 P.2d 921; accord Allred v. Shawley, supra, at p. 1502, 284 Cal.Rptr. 140.)
Whether private property is to be considered quasi-public property subject to the exercise of constitutional rights of free speech and assembly depends in part upon the nature, purpose, and primary use of the property, the extent and nature of the *180 public invitation to use the property, and the relationship between the ideas sought to be presented and the purpose of the forum occupants. (Planned Parenthood v. Wilson, supra, 234 Cal.App.3d at p. 1671, 286 Cal.Rptr. 427; Allred v. Shawley, supra, 232 Cal.App.3d at p. 1501, 284 Cal. Rptr. 140, 73 Ops.Cal.Atty.Gen. 213, 222-223 (1990).)
Thus, pursuant to Pruneyard, we must balance the competing interests of the property owner and of society with respect to the particular property or type of property at issue to determine whether there is a state constitutional right to engage in the challenged activity. (Trader Joe's, supra, 73 Cal.App.4th at p. 433, 86 Cal.Rptr.2d 442.)
Trader Joe's applied this balancing test and concluded that the societal interest in using a Trader Joe's grocery store as a forum for exercising free speech and petitioning activities did not outweigh the store's interest in exercising exclusive control over the use of its private property. (73 Cal.App.4th at pp. 433-434, 437, 86 Cal.Rptr.2d 442; see also Slevin v. Home Depot (N.D.Cal.2000) 120 F.Supp.2d 822, 834-835 (hereafter Home Depot) [same with respect to a Home Depot warehouse-style home improvement store].)
We reach a similar conclusion with respect to the Raley's supermarket in West Sacramento. The store sells a wide variety of merchandise, such as prescription drugs, hardware, flowers, baked goods, and take-out Chinese food and coffee, but the majority of its goods are traditional grocery store items. It is located in a freestanding building containing 57,668 square feet, of which 37,235 square feet are open to the public. Raley's also owns an adjacent walkway and 107,864 square-foot parking lot. Therefore, the supermarket is much smaller than the 21-acre shopping complex in Pruneyard.
Unlike the shopping center in Pruneyard, but similar to the store in Trader Joe's, the Raley's supermarket is a single structure, single-use store, containing no plazas, walkways, or central courtyards for patrons to congregate and spend time together. The store sells food but has no restaurant or any place for patrons to sit and eat other than two "taxi and bus waiting benches" outside the store. It does not have a cinema or any other form of entertainment. Although the store attracts a large number of people, they come for a single purpose, to buy goods. The store does not invite the public to meet friends, to eat, to rest, to congregate, or to be entertained at its premises. Accordingly, the store's interest in maintaining exclusive control over its private property is stronger than the interest of a shopping mall owner. (Trader Joe's, supra, 73 Cal. App.4th at p. 433, 86 Cal.Rptr.2d 442; Home Depot, supra, 120 F.Supp.2d at p. 834.)
Because the Raley's store is a stand-alone structure, it does not have a relationship to other establishments that transforms it into a public forum. A freestanding store, with abutting parking spaces for customers, does not assume significant public attributes merely because the public is invited to shop there for goods sold by the property owner. Property does not lose its private character merely because the public is generally invited to use it for designated purposes. Thus, in contrast to Pruneyard and other multipurpose shopping centers, the Raley's supermarket in question does not have a public character, it is not a public meeting place, and society has no interest in using it as such. (Trader Joe's, supra, 73 Cal. App.4th at p. 433, 86 Cal.Rptr.2d 442.)
Consequently, like the circumstances in Trader Joe's, the interest that Raley's has *181 in maintaining exclusive control over its private property is stronger than the interest of a shopping mall owner. Similarly, the public's interest in using the private sidewalk at the Raley's supermarket for speech and petitioning activity is not as strong as the public's interest in engaging in those activities at a larger shopping center, such as the Downtown Plaza or Arden Fair Mall in nearby Sacramento. Unlike those malls, there is no place at the Raley's supermarket designed for patrons to sit, converse, and eat, nor is there any form of entertainment. The fact that there are two benches outside the store for people who are waiting for a bus or taxi, and that people could use these benches to sit down and eat food purchased inside the store, hardly transforms the supermarket into a public forum. (Home Depot, supra, 120 F.Supp.2d at p. 834 [hot dog stand with seating for 6 to 12 people did not transform Home Depot into a public forum].) Nor do the facts that the supermarket has a bulletin board at the back of the store and a Wells Fargo Bank for the convenience of its customers render its sidewalk a public forum.
Under the circumstances, the societal interest in using the private sidewalk at Raley's supermarket as a forum for exercising free speech and petitioning activities does not outweigh the interest Raley's has in exercising exclusive control over the use of its private property.

III
Plaintiffs contend the decision in Pruneyard was based on evidence that a large number of people used the Pruneyard shopping mall. They assert that a large number of people visit Raley's and its prominence in West Sacramento makes it a public forum as it "is more [of] a meeting place for West Sacramento's citizens than was the Pruneyard Shopping Center for the citizens of San Jose." According to plaintiffs, people spend up to two hours at a time at Raley's, which is "a community meeting place where people chat, discuss the affairs of the day with their neighbors in line and while waiting for prescriptions, waiting for banking services, merely browsing through the aisles, or sitting out in front of the store on the benches provided for that purpose."
Plaintiffs misinterpret the basis for the holding in Pruneyard. It is not enough that a large number of people visit a store. Pruneyard was premised on evidence showing that shopping centers have supplanted central business districts as the preferred public forum. (Pruneyard, supra, 23 Cal.3d at pp. 906-908, 910, fn. 5, 153 Cal.Rptr. 854, 592 P.2d 341; Trader Joe's, supra, 73 Cal.App.4th at pp. 433-434, 86 Cal.Rptr.2d 442.)
Here, there is no tangible evidence that the private sidewalk at Raley's has assumed a role in West Sacramento as the functional equivalent of a public forum in a manner comparable to the shopping center in Pruneyard. The mere fact that the store allows people to engage in speech and petitioning activities there subject to time, place, and manner restrictions does not transform the area into a public forum. (Home Depot, supra, 120 F.Supp.2d at p. 835.) Raley's is open to the general public, but its invitation is limited to the transaction of business, absent compliance with its permit application procedure for other activities. The trial court found that Raley's affirmatively discourages people from lingering in the store and that it was undisputed the primary reason people visit Raley's is to buy groceries and other convenience items, not to congregate, linger or seek entertainment.
Plaintiffs ignore the trial court's findings and do not challenge the sufficiency of the evidence in support of those findings by *182 setting forth all the relevant evidence and showing the manner in which it does not sustain the court's findings. (Foreman & Clark Corp. v. Fallon, supra, 3 Cal.3d at p. 881, 92 Cal.Rptr. 162, 479 P.2d 362.) They do not cite to any evidence in the record establishing that Raley's invites the public to enter for non-commercial purposes, such as to meet friends, eat, rest, be entertained, or otherwise congregate as one might in a town square or at the shopping mall in Pruneyard. Instead, plaintiffs rely on the testimony of one customer for the proposition that Raley's is a public meeting place. However, one store customer does not equate to the general public or show that the court's findings are not supported by substantial evidence. Moreover, plaintiffs overlook that the customer testified she spent two hours at the store doing her big weekly shopping, which is not the equivalent of using Raley's as a public forum. When she spoke with neighbors there, it was the result of a happenstance meeting, not prearranged socializing, and she did not take her family to Raley's for recreational or social outings.
According to plaintiffs, the public's interest in using Raley's as a forum for speech and petitioning activities weighs in favor of finding that it is a public forum. They maintain there is substantial evidence "that Raley's was a `crucial' location for gathering signatures because of the high volume of traffic and the percentage of registered voters `interested in the issues' who frequented the store."
Again, plaintiffs ignore the trial court's finding that Raley's was not a crucial location for gathering signatures. Merely pointing out contrary evidence is insufficient to meet their appellate burden of establishing that this finding is not supported by substantial evidence. (Foreman & Clark Corp. v. Fallon, supra, 3 Cal.3d at p. 881, 92 Cal.Rptr. 162, 479 P.2d 362; Huang v. Board of Directors (1990) 220 Cal.App.3d 1286, 1294, 270 Cal.Rptr. 41; 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 364, p. 414.)
Furthermore, the evidence they cite is one person's testimony that Raley's is a crucial place to gather signatures because he gets a lot of signatures at the Raley's in question and because he perceives that the people who frequent Raley's are "interested in the issues." This hardly undermines the trial court's factual finding.
Accordingly, plaintiffs have failed to demonstrate that the private sidewalk at the Raley's supermarket in West Sacramento is a public forum where they have the right to engage in speech and petitioning activities.

IV
Plaintiffs contend that prohibiting them from petitioning on Raley's private sidewalk is contrary to the California Supreme Court's decision in In re Lane (1969) 71 Cal.2d 872, 79 Cal.Rptr. 729, 457 P.2d 561, which held that, "when a business establishment invites the public generally to patronize its store and in doing so to traverse a sidewalk opened for access by the public[,] the fact of private ownership of the sidewalk does not operate to strip the members of the public of their rights to exercise First Amendment privileges on the sidewalk at or near the place of entry to the establishment." (Id. at p. 878, 79 Cal.Rptr. 729, 457 P.2d 561.)
Rather than interpreting state constitutional rights to speech, the holding of In re Lane was based solely upon First Amendment law that no longer is viable in light of Lloyd Corp. v. Tanner, supra, 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131. Nonetheless, plaintiffs argue In re Lane was cited with approval in Pruneyard, supra, 23 Cal.3d at pages 908 through 909, 153 *183 Cal.Rptr. 854, 592 P.2d 341, in a manner indicating the California Supreme Court implicitly held that In re Lane correctly interpreted free speech rights under the California Constitution. Consequently, plaintiffs believe there is an entitlement to petition on Raley's property because In re Lane permitted expressive activity at a free-standing grocery store. We disagree.
In re Lane concerned the distribution of handbills on a supermarket's private sidewalk by an officer of a labor union involved in a labor dispute with the publisher of certain newspapers. The handbills urged customers not to patronize the supermarket because it advertised in the publisher's newspapers. (71 Cal.2d at pp. 873-874, 79 Cal.Rptr. 729, 457 P.2d 561.) Relying both on First Amendment law and state labor policy, In re Lane overturned the union officer's conviction for violating city ordinances by remaining on the supermarket property after being asked to leave. (Id. at pp. 875-879, 79 Cal.Rptr. 729, 457 P.2d 561.) The court noted: "If we were to hold the particular sidewalk area to be `off limits' for the exercise of First Amendment rights in effect we would be saying that by erecting a `cordon sanitaire' around its store, [the store] has succeeded in immunizing itself from on-the-spot public criticism." (Id. at p. 876, 79 Cal.Rptr. 729, 457 P.2d 561.)
Pruneyard cited to In re Lane and Schwartz-Torrance Investment Corp. v. Bakery & Confectionery Workers' Union, supra, 61 Cal.2d 766, 40 Cal.Rptr. 233, 394 P.2d 921 (hereafter Schwartz Torrance), involving union picketing at a bakery, as evidence of the strength of liberty of speech in California. (Pruneyard, supra, 23 Cal.3d at p. 908, 153 Cal.Rptr. 854, 592 P.2d 341.) It stated: "The fact that those opinions cited federal [First Amendment] law that subsequently took a divergent course does not diminish their usefulness as precedent." (Ibid.) It is this language upon which plaintiffs rely as evidence that Pruneyard adopted the holding of In re Lane as representative of expressive rights under the California Constitution.
A similar contention was raised and rejected in Trader Joe's, which explained: the expressive activity at issue in In re Lane was picketing by a labor union at a store involved in the labor dispute; the reasoning of In re Lane was influenced by this fact and by the need to prevent the store from insulating itself from public comment for its role in the labor dispute, which was an important factor in weighing the competing interests of the property owner and the public; the reference in Pruneyard to In re Lane was brief and collateral; Pruneyard did not expressly or implicitly hold that our state Constitution protects free speech and petitioning rights at privately owned stand-alone grocery stores; rather, Pruneyard merely cited In re Lane as an example of a case in which speech rights overrode conflicting property interests when these competing interests were weighed in the balance. (Trader Joe's, supra, 73 Cal.App.4th at pp. 435-436, 86 Cal.Rptr.2d 442.)
Thus, Trader Joe's concluded In re Lane was factually inapposite because it involved a labor dispute, not an attempt to solicit customers to sign initiative petitions. (Trader Joe's, supra, 73 Cal.App.4th at p. 436, 86 Cal.Rptr.2d 442.)
We agree that Pruneyard's reference to the labor union cases of In re Lane and Schwartz-Torrance was "simply for the proposition that the property rights of the shopping centers were not absolute but were subject to a balancing process in determining the right to access." (Union of Needletrades, etc. Employees v. Superior Court (1997) 56 Cal.App.4th 996, 1011, fn. 4, 65 Cal.Rptr.2d 838.) Because the "activists" were involved in protected union *184 activity and not merely expressing opinions, "this ... strengthened their interests, which in turn tipped the balance (against the private [property] owner's interests) in [the activists'] favor." (Allred v. Shawley, supra, 232 Cal.App.3d at p. 1504, 284 Cal.Rptr. 140.)
Accordingly, we agree the value of In re Lane as precedent is limited by its labor law context. (See also Home Depot, supra, 120 F.Supp.2d at pp. 833-834.)
This conclusion is supported by Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters (1979) 25 Cal.3d 317, 158 Cal.Rptr. 370, 599 P.2d 676 (hereafter Sears), decided after Pruneyard. In Sears, the Supreme Court reviewed an order restraining union officers and members from peacefully picketing on a privately owned sidewalk surrounding the plaintiff's stand-alone department store. While the case was pending on appeal, "the Legislature enacted the Moscone Act, Code of Civil Procedure section 527.3, which limits the equity jurisdiction of superior courts in granting injunctions in cases involving labor disputes." (Sears, supra, at pp. 320-321, 158 Cal.Rptr. 370, 599 P.2d 676.) Sears cited Schwartz-Torrance and In re Lane as establishing the legality of picketing on private sidewalks outside the store as a matter of state labor law. (Sears, supra, at p. 328, 158 Cal.Rptr. 370, 599 P.2d 676.) Thus, Sears concluded that "the sidewalk outside a retail store has become the traditional and accepted place where unions may, by peaceful picketing, present to the public their views respecting a labor dispute with that store. Recognized as lawful by the decisions of this court, such picketing likewise finds statutory sanction in the Moscone Act, and enjoys protection from injunction by the terms of that act. In such context the location of the store whether it is on the main street of the downtown section of the metropolitan area, in a suburban shopping center or in a parking lot, does not make any difference. Peaceful picketing outside the store, involving neither fraud, violence, breach of the peace, nor interference with access or egress, is not subject to the injunction jurisdiction of the courts." (Id. at pp. 332-333, 158 Cal.Rptr. 370, 599 P.2d 676, italics added.)
In sum, we agree with Trader Joe's that neither In re Lane nor Pruneyard held expressive activity always is protected at large stand-alone supermarkets.

V
Plaintiffs argue that our interpretation of In re Lane and our adoption of Trader Joe's holding that Pruneyard speech rights do not extend necessarily to all large free-standing supermarket grocery stores is contrary to our decision in Bank of Stockton v. Church of Soldiers, supra, 44 Cal.App.4th 1623, 52 Cal.Rptr.2d 429 (hereafter Bank of Stockton).
In Bank of Stockton, we were called upon to decide whether the trial court abused its discretion in granting a preliminary injunction preventing a religious organization from soliciting donations from bank customers on bank-owned property. (Id. at p. 1625, 52 Cal.Rptr.2d 429.) We upheld the preliminary injunction on the ground that the bank was not the equivalent of a public forum because it was a modest retail establishment that did not provide a place for the general public to congregate and take advantage of various amenities, and the religious organization's soliciting was unrelated to the bank's activities. (Id. at pp. 1629-1631, 52 Cal.Rptr.2d 429.)
In reaching this conclusion, we stated that Pruneyard had "resurrected" In re Lane and "convert[ed] [it] into state, rather *185 than federal, law precedent ]." (Bank of Stockton, supra, 44 Cal.App.4th at p. 1629, 52 Cal.Rptr.2d 429.) Then, we asserted: "Whatever `modest retail establishment' means, it does not include a large shopping center and, in light of In re Lane, supra, 71 Cal.2d 872, 79 Cal.Rptr. 729, 457 P.2d 561, decided before [Pruneyard] but relied on in [Pruneyard], it also does not include a `large "super-market-type" grocery store.'" (Bank of Stockton, supra, at p. 1630, 52 Cal.Rptr.2d 429, citing Pruneyard, supra, 23 Cal.3d at pp. 908-909, 153 Cal.Rptr. 854, 592 P.2d 341.)
This apparent bright-line rulethat a modest retail establishment within the meaning of Pruneyard does not include a large super-market-type grocery store (such as Waremart)was dictum, as Bank of Stockton was not required to decide whether a large super-market-type grocery store is the equivalent of a public forum within the meaning of Pruneyard. Moreover, for the reasons stated above (Part IV, ante), this dictum misinterprets Pruneyard's reference to In re Lane.
Accordingly, we back away from our erroneous dictum in Bank of Stockton and decline to follow it.

VI
Plaintiffs also rely on N.L.R.B. v. Calkins (9th Cir.1999) 187 F.3d 1080 (hereafter Calkins), which upheld a National Labor Relations Board order finding that a supermarket owner committed an unfair labor practice by threatening to have non-employee union representatives arrested for handbilling and picketing in furtherance of a consumer boycott on the store's privately owned walkway and parking lot.
According to plaintiffs, Calkins held that California law prohibits owners of general access supermarkets from excluding speech activity on their private adjacent sidewalks and parking lots because such stores are not "modest retail establishments" within the meaning of Pruneyard. (Calkins, supra, 187 F.3d at pp. 1090-1092.)
Because Calkins is a decision of a federal court, it is not binding or controlling in this matter involving state law. (Howard Contracting, Inc. v. G.A. MacDonald Construction Co. (1998) 71 Cal. App.4th 38, 52, 83 Cal.Rptr.2d 590.) Furthermore, it is not persuasive for several reasons.
First, Calkins relies on the dictum in Bank of Stockton, which we have disapproved, and on its overly expansive misinterpretation of In re Lane. (Calkins, supra, 187 F.3d at pp. 1090-1092.) Second, Calkins does not mention or distinguish Trader Joe's. In the absence of a decision from a state's highest court, a federal court must consider rulings of intermediate appellate state courts in ascertaining state law and apply such rulings absent a persuasive reason to disregard them. (West v. American Teleph. & Teleg. Co. (1940) 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139, 144; Lewis v. Telephone Employees Credit Union (9th Cir.1996) 87 F.3d 1537, 1545.)[3] Third, Calkins is factually inapposite because it involves expressive activity by a labor union which, as we explained previously, is afforded a greater protection where the union is engaged in a dispute with the property owner. Under the circumstances, plaintiffs' reliance on Calkins is misplaced. (See also Home Depot, supra, 120 F.Supp.2d at p. 834, fn. 8.)[4]

*186 VII
Plaintiffs assert that, at the close of their evidence, the trial court granted a motion for judgment pursuant to Code of Civil Procedure section 631.8 in favor of Raley's on plaintiffs' cause of action for false arrest. Plaintiffs do not set forth the grounds of the motion or the trial court's ruling, they simply argue that, "[i]f the sidewalk in front of the West Sacramento Raley's Superstore is a public forum, then it follows that the citizen's arrests of plaintiffs were false arrests and the court's judgment must be reversed." Plaintiffs then launch into an argument that, to effectuate a citizen's arrest for a misdemeanor such as trespass, the misdemeanor must have been committed in the presence of the person making the citizen's arrest. Plaintiffs argue that a good-faith belief that a misdemeanor was committed in one's presence is insufficient to justify a citizen's arrest. But they do not provide any explanation regarding how this is relevant to the court's ruling, nor do they cite to any portion of the record wherein the relevant facts may be found.
As best we can discern, given the lack of context provided by plaintiffs for their argument, they believe that if Raley's store is a public forum, then Raley's did not have the right to make a citizen's arrest and its good-faith belief that it did is not sufficient to overcome plaintiffs' cause of action for false arrest. Plaintiffs do not set forth any argument in their opening brief that their false arrest claim survives if Raley's is not a public forum. It is not until their reply brief that plaintiffs raise such a contention, arguing Raley's had no right to arrest them for trespass because there is no evidence that plaintiffs obstructed or interfered with Raley's business. (Pen.Code, § 602.1, subd. (a).)[5]
Plaintiffs' contention is waived for two reasons. First, it is raised for the first time in their reply brief without a showing of good cause for their belated argument. (Garcia v. McCutchen (1997) 16 Cal.4th 469, 482, fn. 10, 66 Cal.Rptr.2d 319, 940 P.2d 906; Neighbours v. Buzz Oates Enterprises (1990) 217 Cal.App.3d 325, 335, fn. 8, 265 Cal.Rptr. 788.) Second, plaintiffs have failed to raise a cognizable challenge to the sufficiency of the evidence in support of the judgment.
The trial court's statement of decision indicates that plaintiffs were arrested after they provoked conflicts with employees of Raley's, caused congestion at the entry and exit doors, detained customers, and refused to leave upon request; i.e., they were arrested after they interfered with the business being conducted at Raley's supermarket.
Plaintiffs fail to meet their burden of setting forth all the relevant evidence and showing the manner in which it does not support the judgment. Accordingly, plaintiffs' *187 contention that there is no evidence to support a judgment for Raley's on plaintiffs' false arrest cause of action is waived. (Foreman & Clark Corp. v. Fallon, supra, 3 Cal.3d at p. 881, 92 Cal.Rptr. 162, 479 P.2d 362.)

DISPOSITION
The judgment is affirmed.
MORRISON, J, and KOLKEY, J., concur.
NOTES
[1] Plaintiffs appealed from the trial court's statement of decision, which does not state that judgment is entered for Raley's. Because the appellate record did not include a judgment, we advised plaintiffs' counsel that we would dismiss the appeal on our own motion if counsel did not provide a copy of a signed judgment within a specified time. Plaintiffs' counsel has provided the requisite copy of the judgment, and the record on appeal is deemed augmented to include a copy of the judgment. We exercise our discretion to treat plaintiffs' notice of appeal as commencing a valid appeal from the subsequent judgment. (Cal. Rules of Court, rule 2(c); Giannuzzi v. State of California (1993) 17 Cal.App.4th 462, 464, fn. 2, 21 Cal.Rptr.2d 335.)
[2] Article I, section 2 of the California Constitution states in pertinent part: "Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press." Article I, section 3 of the California Constitution states: "The people have the right to instruct their representatives, petition government for redress of grievances, and assemble freely to consult for the common good."
[3] Calkins was decided on August 11, 1999, 34 days after Trader Joe's was filed on July 8, 1999, and 4 days after Trader Joe's became final. (Cal. Rules of Court, rule 24.)
[4] Because Raley's supermarket in West Sacramento is not a public forum and, thus, Raley's is entitled to exclude all speech and petitioning activities on its premises, we need not address plaintiffs' challenge to the court's determination that, assuming the store is a public forum, the regulations adopted by Raley's to govern petitioning and speech activities on its premises are reasonable time, place, and manner restrictions.
[5] Penal Code section 602.1 provides in pertinent part: "(a) Any person who intentionally interferes with any lawful business or occupation carried on by the owner or agent of a business establishment open to the public, by obstructing or intimidating those attempting to carry on business, or their customers, and who refuses to leave the premises of the business establishment after being requested to leave by the owner or the owner's agent, or by a peace officer acting at the request of the owner or owner's agent, is guilty of a misdemeanor.... [¶] ... [¶] (c) This section shall not apply to any of the following persons: [¶] ... [¶] (2) Any person on the premises who is engaging in activities protected by the California Constitution or the United States Constitution."