[No. B143326. Second Dist., Div. Four. Nov. 20, 2001.]

JEFFREY PETER LUSHBAUGH, Plaintiff and Appellant, v.
HOME DEPOT U.S.A., INC., et al., Defendants and Respondents.

**COUNSEL**

Gronemeier & Associates and Dale L. Gronemeier for Plaintiff and Appellant.

Katten Muchin Zavis, Thomas J. Leanse, Stacey McKee Knight and Karen L. Stephenson for Defendants and Respondents.

**OPINION**

**CURRY, J.**—The parties in this case seek to have us resolve the issue of whether a stand-alone warehouse-type retail establishment is the modern-day equivalent of a shopping mall and therefore subject to the California Supreme Court's decision in *Robins v. Pruneyard Shopping Center* (1979) 23

Cal.3d 899 [153 Cal.Rptr. 854, 592 P.2d 341] (*Pruneyard*), affirmed *Pruneyard Shopping Center v. Robins* (1980) 447 U.S. 74 [100 S.Ct. 2035, 64 L.Ed.2d 741]. *Pruneyard* precludes certain private property owners from unreasonably restricting or interfering with access by members of the public who desire to engage in free expression under the California Constitution. Because we conclude that the restrictions imposed in this instance consisted of reasonable regulations of the time, place, and manner of appellant's speech, we do not reach the issue urged by the parties and decide the matter on narrower grounds.

### FACTUAL AND PROCEDURAL BACKGROUND

The essential facts are not in dispute. On March 25, 1998, appellant Jeffrey Peter Lushbaugh sought to gather signatures on an initiative petition by approaching customers of respondent Home Depot U.S.A., Inc.'s Glendale store. The company has a written policy that permits persons to conduct speech activities in "Designated Areas" on store property. Respondent Greg Duffin, administrative store manager for the Glendale store, directed appellant to stand in a certain area near the principal entrance, marked by spray paint. Appellant was unhappy with the placement and frequently went outside the area outlined by Duffin, moving closer to the entrance door. Appellant returned on the 27th and again failed to keep within the Designated Area. Respondent Paul DeVos, loss prevention manager for the Glendale store, repeatedly warned appellant not to leave the Designated Area and to stand where he had been directed. Eventually, DeVos called the Glendale Police Department and effected a citizen's arrest for trespass under Glendale Municipal Code section 9.20.070.[1]

Appellant brought suit against respondents for false arrest, abuse of process, and violation of his First Amendment rights, seeking damages, injunctive relief, and declaratory relief.

After conducting discovery, both sides submitted motions for summary judgment. In his moving papers, appellant sought to establish that Home Depot stores are the functional equivalent of the shopping malls, which were the subject of the landmark California Supreme Court decision in *Pruneyard*. To that end, appellant set forth facts detailing the Glendale store's size, number of customers, and amenities available to the public.

Appellant also sought to establish that the restrictions placed on his solicitation of signatures violated Home Depot's own internal policies and

---

[1]According to the complaint, the Glendale City Attorney ultimately decided not to press charges.

guidelines. Home Depot's guidelines provide that "[e]ach Home Depot store should have at least one designated area for use by individuals desiring to engage in Non-Commercial Speech Activity . . . ." To ensure "Home Depot's goal of assuring that no person or property is injured in the course of Non-Commercial Speech Activity, no Activity shall be permitted anywhere other than in a Designated Area." According to the guidelines, "[e]ach Designated Area should be approximately sixty-four (64) square feet in size, preferably an eight (8) foot by eight (8) foot square." The Designated Area "should be located outside of the store, with the area between the Designated Area and the nearest public exit unobstructed." If a store has "more than one public exit, then a Designated Area should be located near each public exit." The guidelines further state that "the location of a Designated Area may be subject to change, depending upon the individual store's conditions, permits and restrictions." The guidelines expressly state that they should not be made available to the public. Instead, the public is to be given a list of "Rules" which do not apprise persons of where Designated Areas, for free speech activities will or should be placed, but simply inform persons that any desired speech activities must take place in Designated Areas, which are available on a first come, first served basis and require a written application to store management.

Respondents established in their moving papers that the Glendale store and adjoining parking lot are located entirely on private property. The parking lot is reserved for exclusive use by customers, employees, guests, and suppliers. The nearest public property is at the entrances to the parking lot, which cross public sidewalks. The Glendale store is approximately 94,103 square feet and is host to approximately 33,000 to 35,000 customers per week. It is not part of a shopping mall, contains no theater or entertainment facilities, and has no central courtyard or plaza. Insofar as public facilities are concerned, the store conducts classes and how-to clinics on home improvement, and an independent vendor operates a hot dog stand in the parking lot, which includes tenting, two tables, and bench seating for up to 12 people.

The Glendale store has two doors, the northern door and the southern door. Customers primarily enter through the northern door, which is considered the main entrance. They may also exit through this door, but the principal exit is the southern door which is a roll-up type. The southern door is the only one large enough for access by forklifts and scissor lifts, which are used to carry contractor supplies and large purchases.

In support of the defense motion for summary judgment, respondents submitted declarations and depositions from management personnel that

expressed the opinion that permitting persons to utilize the southern door for expressive activities would be unsafe because it would increase the chance of a collision between customers and forklift or scissor lift operators. Also submitted were excerpts from appellant's deposition wherein he testified that when asked to move from the exit door, he did not need to ask why—he knew it was because of the heavy traffic and because there was a safety issue.[2] He testified that he personally observed a lot of congestion at the doorway from the foot traffic and forklift operations. In addition, appellant conceded that he frequently left the Designated Area to solicit signatures for his petition.

The trial court granted respondents' motion for summary judgment. The order gives two bases: (1) that "the Glendale Store's frontage area does not qualify as a quasi-public forum and therefore the requirements of Pruneyard and its progeny do not apply" and (2) that "even though Home Depot was not legally required to implement time, place and manner rules at its Glendale Store, it fully complied with its rules[;] [s]pecifically, Home Depot's internal guidelines for the rules permitted the Glendale Store, in its discretion, to designate a petitioning area at the Northern Door and prohibit noncommercial expressive activities at the Southern Door for safety reasons." Judgment was entered in favor of respondents, and this appeal followed.

DISCUSSION

I

■ "Summary judgment properly is granted if the 'affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice shall or may be taken' in support and in opposition to the motion 'show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' (Code Civ. Proc., § 437c, subds. (b), (c).) Summary judgment is a drastic procedure, inasmuch as it denies the right of the opposing party to trial, and it thus should be used with caution. [Citation.] Therefore, the moving party's papers are strictly construed, accepting as fact only those portions not contradicted by opposing papers, while the opposing party's papers are liberally construed, all facts therein being accepted as true. [Citation.] [¶] When it is the defendant who moves for summary judgment, summary

---

[2] Appellant stated in a declaration filed in opposition to respondents' motion for summary judgment that he "petitioned safely, and can petition safely at the exit area to the Glendale Home Depot store so long as Home Depot's employees are not trying to harass me." He accused equipment operators of "perceiving that [he] was disfavored by management" and beginning to "harass [him] by driving equipment such as fork lifts closer to [him]."

judgment is proper if the defendant either proves an affirmative defense or disproves at least one essential element of the plaintiff's cause of action [citations], or if the defendant shows that an element of the cause of action cannot be established [citation]. . . . The defendant 'must show that under no possible hypothesis within the reasonable purview of the allegations of the complaint is there a material question of fact which requires examination by trial.' [Citation.] Only if the defendant makes the requisite showing does the court need to examine the plaintiff's opposing papers to determine if they demonstrate the existence of a triable issue of material fact. [Citations.]" (*Salazar v. Southern Cal. Gas Co.* (1997) 54 Cal.App.4th 1370, 1375-1376 [63 Cal.Rptr.2d 522].)

■ "On appeal, we review the trial court's decision to grant or deny the summary judgment motion de novo, on the basis of an examination of the evidence before the trial court and our independent determination of its effect as a matter of law. [Citations.] We are not bound by the trial court's stated reasons or rationale. Instead, we review the summary judgment without deference to the trial court's determination of questions of law. [Citations.]" (*Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 163 [80 Cal.Rptr.2d 66].)

Article I, section 2 of the California Constitution provides: "(a) Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press." Article I, section 3 provides: "The people have the right to instruct their representatives, petition government for redress of grievances, and assemble freely to consult for the common good." In *Pruneyard*, the California Supreme Court was concerned about the fact that central business districts connected by public thoroughfares and sidewalks on which citizens could congregate and express themselves were increasingly "yield[ing] their functions" to privately owned suburban shopping centers. (*Pruneyard, supra,* 23 Cal.3d at p. 907.) These shopping centers were in many ways, the functional equivalent of downtown business areas but were entirely contained on private property. The particular shopping center at issue in *Pruneyard* was approximately 21 acres—"5 devoted to parking and 16 occupied by walkways, plazas, and buildings that contain 65 shops, 10 restaurants, and a cinema." (*Id.* at p. 902.) Reversing a then recent contrary decision, *Diamond v. Bland* (1974) 11 Cal.3d 331 [113 Cal.Rptr. 468, 521 P.2d 460], the court concluded that "[s]hopping centers to which the public is invited can provide an essential and invaluable forum for exercising [speech and petition] rights," and held that "sections 2 and 3 of article I of the California Constitution protect speech and petitioning, reasonably exercised, in shopping centers even when the centers are privately owned." (*Pruneyard, supra,* at p. 910.)

The court recognized in *Pruneyard* that the needs of the public to free expression in quasi-public areas such as shopping centers must be balanced by the private property interests of the owners. The majority in *Pruneyard* quoted with approval a statement made by dissenting Justice Mosk in *Diamond v. Bland, supra,* 11 Cal.3d 331: " 'It bears repeated emphasis that we do not have under consideration the property or privacy rights of an individual homeowner or the proprietor of a modest retail establishment. As a result of advertising and the lure of a congenial environment, 25,000 persons are induced to congregate daily to take advantage of the numerous amenities offered by the [shopping center there]. A handful of additional orderly persons soliciting signatures and distributing handbills in connection therewith, *under reasonable regulations adopted by defendant to assure that these activities do not interfere with normal business operations* [citation] would not markedly dilute defendant's property rights.' [Citation.]" (*Pruneyard, supra,* 23 Cal.3d at pp. 910-911, italics added, quoting *Diamond v. Bland, supra,* 11 Cal.3d at p. 345 (dis. opn. of Mosk, J.).) The court in *Pruneyard* also cited Justice Traynor's opinion in *In re Hoffman* (1967) 67 Cal.2d 845, 852-853 [64 Cal.Rptr. 97, 434 P.2d 353], for the proposition that "property owners as well as government may regulate speech as to time, place, and manner. [Citation.]" (*Pruneyard, supra,* at p. 909.)

 The trial court here gave two reasons for granting summary judgment: (1) that Home Depot was exempt from the holding in *Pruneyard,* and (2) that respondents fully complied with Home Depot's existing time, place, and manner rules by precluding access to the southern door for safety reasons. Appellant seeks a reversal of the first ruling, arguing that just as shopping centers replaced "Main Street" as the gathering place for members of the public potentially interested in lending an ear (or signature) to political activists, stand-alone warehouse-type discount stores are replacing shopping centers. We are not sure that the analogy rings true. Shopping centers encourage the public to linger on the premises with facilities such as restaurants, theatres, public benches, or attractive walkways. The store involved here provided little beyond a hot dog stand and classes directly related to marketing its home improvement products. (See *Trader Joe's Co. v. Progressive Campaigns, Inc.* (1999) 73 Cal.App.4th 425, 434, 437 [86 Cal.Rptr.2d 442] [holding that a specialty grocery store which "opens its property to the public so the public can buy goods" and "does not offer its property for any other use" is not a "public forum uniquely suitable as a place to exercise free speech and petitioning rights" and that size is "a relevant factor" but not "the determinative factor"].)

But even assuming that appellant is correct, because we agree that Home Depot complied with any duty it may have had to provide public access by

enforcing its reasonable time, place, and manner rules, we need not consider whether a warehouse-type retail store's characteristics do or do not render it immune from *Pruneyard*'s reasoning.[3]

## II

■ The United States Supreme Court has divided *public* property into three categories. "The first is the traditional public forum—i.e., a place that by long tradition has been used by the public at large for the free exchange of ideas," such as public streets and parks. (*Clark v. Burleigh* (1992) 4 Cal.4th 474, 482 [14 Cal.Rptr.2d 455, 841 P.2d 975].) State actions regulating speech in a traditional public forum are subject to "strict scrutiny." (*Id.* at p. 483.) The second category " 'is the designated public forum, . . . property that the state has opened for expressive activity by part or all of the public.' [Citation.]" (*Ibid.*) "A content-based regulation of speech in a designated public forum is subject to strict scrutiny[.]" (*Ibid.*) In the third category is " 'all remaining public property' . . . , a category usually referred to as the 'nonpublic forum.' [Citation.]" (*Ibid.*, fn. omitted.) " 'Limitations on expressive activity conducted on this last category of property must survive only a much more limited review. The challenged regulation need only be reasonable, as long as the regulation is not an effort to suppress the speaker's activity due to disagreement with the speaker's view.' [Citation.]" (*Ibid.*, quoting *International Soc. for Krishna Consciousness, Inc. v. Lee* (1992) 505 U.S. 672, 679 [112 S.Ct. 2701, 2705, 120 L.Ed.2d 541].)

The abortion protest cases cited in the parties' briefs, such as *Feminist Women's Health Center v. Blythe* (1995) 32 Cal.App.4th 1641 [39 Cal.Rptr.2d 189], and *Planned Parenthood Shasta-Diablo, Inc. v. Williams* (1995) 10 Cal.4th 1009 [43 Cal.Rptr.2d 88, 898 P.2d 402], tend to involve the extremes. On the one hand, protestors may wish to gather on entirely private property (e.g., the parking lot of a medical clinic); on the other, they may seek to utilize a traditional public forum (e.g., a public sidewalk bordering the clinic). In the abortion protest cases, the courts have generally concluded that the parking lots and entrance areas of medical clinics do not represent *Pruneyard*-type fora so that persons who come onto those sites without permission may be treated as trespassers without regard to their desire to engage in free expression. (See, e.g., *Feminist Women's Health Center v. Blythe, supra*, at pp. 1659-1661.) When faced with the issue of the extent to which protestors who wish to demonstrate on the public sidewalks

---

[3]We note that this issue is currently pending before the Supreme Court in *Waremart, Inc. v. Progressive Campaign, Inc.* (2000) 85 Cal.App.4th 679 [102 Cal.Rptr.2d 392], review granted March 14, 2001, S094236 and *Young v. Raley's, Inc.* (2001) 89 Cal.App.4th 476 [107 Cal.Rptr.2d 172], review granted August 15, 2001, S098428.

and streets surrounding the clinics may be regulated or restricted by local injunction, the court applies the highest level of scrutiny—" 'whether the challenged provisions . . . burden no more speech than necessary to serve a significant government interest.' " (*Planned Parenthood Shasta-Diablo, Inc. v. Williams, supra*, at p. 1017, quoting *Madsen v. Women's Health Center, Inc.* (1994) 512 U.S. 753, 765 [114 S.Ct. 2516, 2524-2525, 129 L.Ed.2d 593]; accord, *Feminist Women's Health Center v. Blythe, supra*, at pp. 1661-1662 ["Such areas as streets, sidewalks and parks historically have been viewed as 'quintessential public forums' where free speech cannot be prohibited. [Citations.] However, an injunction may restrict speech in such a forum if the injunction's provisions are 'content-neutral' and 'burden no more speech than necessary to serve a significant government interest.' [Citation.]"].)

*H-CHH Associates v. Citizens for Representative Government* (1987) 193 Cal.App.3d 1193 [238 Cal.Rptr. 841], discussed at length by appellant, is equally unhelpful. The majority formulated a standard for review of access rules adopted by private property owners of *Pruneyard*-type fora, concluding that such rules should be analyzed under the standard used where the *government* restricts access to a traditional *public* forum. According to the majority in *H-CHH*, "The exercise of rights of free expression may be restricted when it conflicts with the promotion of countervailing substantial or compelling interests. [Citation.] However, even those restrictions justified in the protection of these interests must be narrowly drawn to that end. [Citations.]" (*H-CHH Associates v. Citizens for Representative Government, supra*, 193 Cal.App.3d at p. 1207.)

In a concurring and dissenting opinion, Justice Hanson disagreed with the majority's use of the Supreme Court's strict scrutiny standard in its analysis: "For two reasons, a *Pruneyard*-type forum falls into none of the three [Supreme Court-enunciated] categories. First, it is privately owned. Second, the limitations on the public's access to the property originate not from any governmental or other public entity, but from the private owner. Thus, while '[f]ederal principles are relevant' in determining the standard of review to be accorded property in this fourth category, so long as federal rights are protected, federal standards of review are not conclusive. (*Robins v. Pruneyard Shopping Center, supra*, 23 Cal.3d at p. 909 (conc. & dis. opn. of Hanson, J.).) The standard of review for this 'broader zone' of First Amendment expression, guaranteed by the California Constitution [citation], is lower than the federal standards of review, and a matter for articulation by the California courts." (*H-CHH Associates v. Citizens for Representative Government, supra*, 193 Cal.App.3d at pp. 1224-1225.)

Utilizing "strict scrutiny" to invalidate rules prepared by private persons to control use of their own property would not appear to be what the

Supreme Court envisioned in *Pruneyard* when it stressed that owners could adopt " 'reasonable regulations . . . to assure that [the expressive] activities do not interfere with normal business operations . . . .' " (*Pruneyard, supra,* 23 Cal.3d at p. 911.) But because appellant is not challenging the rules themselves,[4] we have no occasion to determine whether to subject them to strict scrutiny review. Appellant concedes that the rules as written are reasonable but seeks to convince us that the company and its employees failed to follow its own written guidelines.

■■■■ Turning to the issue raised, respondents established that Home Depot permits signature gatherers such as appellant, and others with free speech interests, to use Designated Areas near its stores pursuant to written guidelines. The written guidelines state that "[e]ach Home Depot store should have at least one designated area for use by individuals desiring to engage in Non-Commercial Speech Activity"; that "[t]o further Home Depot's goal of assuring that no person or property is injured in the course of Non-Commercial Speech Activity, no Activity shall be permitted anywhere other than in a Designated Area"; that the Designated Area "should be located outside of the store, with the area between the Designated Area and the nearest public exit unobstructed"; that if a store has more than one public exit, "a Designated Area should be located near each public exit"; and that "the location of a Designated Area may be subject to change, depending upon the individual store's conditions, permits and restrictions." Thus, although the guidelines indicate that a position near an exit is the preferred spot for locating a Designated Area, they make clear that that is not an absolute requirement and that safety of persons and property is of paramount importance.

The Supreme Court made clear in *Pruneyard* that expressive activities may take place on private property against the wishes of the owner only if such activities do not interfere with "normal business operations." Three different members of Home Depot's management staff concluded that the combination of a high volume of customer traffic and the continuous presence of dangerous motorized equipment at the southern door rendered that door unsuitable for free speech activities. Appellant conceded at his deposition that he understood the reason Duffin moved him was out of a concern for safety. The fact that in a later declaration appellant insisted he could have conducted his signature gathering safely in a location near the southern door does not raise an issue of fact. It represents an attempt to substitute appellant's opinion for that of the persons responsible for the safety of the store's

---

[4]It appears from comments made in the briefs and at oral argument that the guidelines were written as the result of an earlier lawsuit involving a similar access issue that was resolved when Home Depot promulgated the current rules and agreed to abide by them.

customers. As long as there was proof of danger and that reasonable minds could differ as to the best method to avoid that danger, Home Depot's choice of placement for the Designated Area cannot be deemed arbitrary or unreasonable. Although the ultimate power to interpret written rules and regulations lies with the court (see *Campbell Industries v. State Bd. of Equalization* (1985) 167 Cal.App.3d 863, 868 [213 Cal.Rptr. 533]), we see no cause to reject the company's interpretation or substitute our judgment for that of company management where the proffered interpretation is reasonable, in line with the language of the rule, and does not unduly restrict expressive activity. (See *Xiloj-Itzep v. City of Agoura Hills* (1994) 24 Cal.App.4th 620, 638 [29 Cal.Rptr.2d 879], quoting *Ward v. Rock Against Racism* (1989) 491 U.S. 781, 797 [109 S.Ct. 2746, 2757, 105 L.Ed.2d 661] [" '[R]estrictions on the time, place, or manner of protected speech are not invalid "simply because there is some imaginable alternative that might be less burdensome on speech." ' [Citation.]"].)

Appellant further complained that the Designated Area near the northern door was not to his liking because it was several feet from the door, and its position made it difficult for him to intercept customers as they passed through to the store. Respondents' decision to place the Designated Area a few feet from the entrance was not unreasonable. Home Depot's guidelines provide an opportunity for persons with political messages to set up a table and/or a sign so that anyone interested can step forward for further information. That is all that *Pruneyard* requires. The company need not give activists free rein to directly accost every customer entering the store.

### DISPOSITION

The judgment is affirmed.

Epstein, Acting P. J., and Hastings, J., concurred.